Karen **SYLVESTER,** Plaintiff,

v.

**TEXAS SOUTHERN UNIVERSITY,**
et al., Defendants.

**Civil Action No. H–95–1427.**

United States District Court,
S.D. Texas,
Houston Division.

April 8, 1997.

T. Deon Warner, Houston, TX, for Plaintiff.

Cheryl N. Eliott, General Counsel, TSU, Houston, TX, for Defendants.

HUGHES, District Judge.

## Opinion on Summary Judgment

### 1. *Introduction.*

A law student complained about the process the law school used in her appeal of a grade. The school has consistently disregarded every aspect of fair procedure, including its own rules and court orders. In an effort to minimize court intervention, the school was not enjoined at the beginning, and it was given two additional opportunities to correct its mistreatment of the student. Rather than comply with it responsibilities, the school manipulated the process, proving itself unable to obey the law it teaches. A grade of "pass" will be assigned to the examination.

### 2. *Examination & Protest.*

Karen Sylvester, a student at Texas Southern University's Thurgood Marshall School of Law, enrolled in James Bullock's course in wills and trusts in the spring of 1994. Bullock gave the final examination in May 1994 and posted grades in July. Sylvester got a D. The result of this grade is that Sylvester's class rank dropped from first to third. With a grade of C or pass, Sylvester would have remained first.

Sylvester immediately protested orally to Associate Dean Carrington. She protested in writing on August 20, 1994. The school did not respond. She continued to protest orally between August 1994 and March 1995. Sylvester protested in writing a second time on March 26, 1995; this time she wrote the law school's Academic Standards Committee, requesting a review of her wills-and-trusts grade. Sylvester never received a formal response. When she was about to graduate, Bullock informed Sylvester that her examination was lost. When Bullock was ordered to see that the examination was found, it was.

### 3. *The Court.*

On May 10, 1995, Sylvester sought to enjoin her law school's graduation ceremony. Claiming that she had been denied review of her examination, Sylvester sued to preserve her right to appeal the grade because school policy says that a student may not appeal

after graduation. The court did not restrain graduation on the school's representation that it would later adjust the grade if needed.

### 4. School Rules.

TSU's regulations include procedures for disputing grades. The regulations allow students to seek grade changes on the basis of clerical errors that a faculty member refuses to correct or on the basis of discrimination against a specific student through the use of a grossly inconsistent standard for that student. The student is required to protest in writing.

The regulations say that the academic standing committee will review the protested grade and that the dean's office will notify the student in writing of the disposition. TSU did neither.

### 5. Recalcitrant Bullock.

Bullock was defiant. The school agreed to a court-ordered session between Sylvester and Bullock to review the grade. When Sylvester flew to Houston to meet with Bullock at a time set by the dean, Bullock had no key to the answers and no comparable answers for Sylvester to use in judging the deficiencies in her answers. At the next hearing after the truncated review, the court ordered Bullock to pay her expenses of $200 for coming from Dallas and to attend all further conferences and hearings. He did neither.

At the next session in court, Bullock refused to appear. He had to be brought to court by the marshal, although he admitted under oath that he had known for three months that he had been ordered to pay Sylvester's expenses and to attend all proceedings. Counsel for TSU and Bullock stressed that they had notified Bullock of the order and setting. Bullock was ordered to pay Sylvester her lawyer's fees and the marshal its costs. Parenthetically, throughout this bureaucratic shuffle, counsel for the school have been candid and responsible; they are not to blame for the clients' behavior.

### 6. Committee Complicity.

The school agreed to have its committee review Sylvester's examination. At its first meeting, the committee ruled that it lacked jurisdiction to review Sylvester's grade because of defects in her federal-court complaint. At that session, the committee had no comparable answers, although Bullock swore that he had given the committee a key to the answers.

The court sent the protest back to the committee to do the review, leaving the complaint to the parties and court.

The committee chairman unilaterally decided to expel the student members of the committee. Her ground for this *coup* was that it was inappropriate for the students to participate because they would be obliged in the review to become aware of the contents of other students' papers. This is true—and irrelevant—of every action before the standards committee. It contradicts the school's policy, which is manifest in its having put students on the committee in the first place. One member of a committee cannot reconstitute the committee whatever her motives.

The committee review resulted in a report that simply said the review was done and no inconsistencies were found.

One member of the committee abstained from voting and wrote a specific dissent. From this detailed report, the court learned that Bullock still had not furnished a complete set of answers. Despite swearing in court that he had long ago provided a complete key to the examination, Bullock gave "yes" as the full answer to part of question V, and he gave no answer for another section. No student could have received a perfect score for answering "yes" to an essay question on a law school final, yet that was the correct answer on Bullock's key.

The committee was illegally composed and had no means of making an informed judgment about Sylvester's answers; it especially did not have the evidence of comparable examinations required by the school's rules.

### 7. Due Process.

■ TSU claims that Sylvester was not entitled to process besides notification of her

grade. Hypothetically, the school might have a policy that a student may not review an examination nor appeal a grade. Sylvester had a right to both procedural and substantive due process in contesting her grade; she received neither. *See J.J. Martinez v. Texas State Bd. of Medical Examiners,* 476 S.W.2d 400, 405 (Tex.Civ.App.—San Antonio 1972, writ ref'd n.r.e.), appeal dismissed 409 U.S. 1020, 93 S.Ct. 463, 34 L.Ed.2d 312 (1972) (due process is not judicial process; an administrative hearing with rudiments of fair play at law is adequate); *James et al. v. Wall,* 783 S.W.2d 615 (1989)(same).

■ The state may require its institutions to meet standards for regular process that are in excess of the national constitutional standard; therefore, violating a higher state-imposed standard would not necessarily violate the federal law. On the other hand, the Constitution does not define the benefits that a state must furnish nor the process it may use other than to require that similarly situated people be treated similarly. Because in the exercise of its state authority TSU has afforded a meaningful review to other students who protested their grades, TSU must provide that benefit to Sylvester. Governmental actions cannot be arbitrary. Having no basis for comparison is arbitrary. Changing the committee on the chairman's malicious whim is arbitrary. Once the committee had been changed from the official, university-constituted form it was nothing but a mob.

While it is true that the assignment of a test grade is a purely academic evaluation, Sylvester is entitled to due process in that evaluation. TSU is a state institution, funded by tax dollars and operating in the public interest. TSU must adhere to procedural requirements like other state institutions. *See generally* Reavley, *Substantial Evidence and Insubstantial Review in Texas,* 23 S.W.L.J. 239 (1969) (elements of due process at the agency level are notice, hearing, and an impartial trier of facts); William Chamblee, *Administrative Law: Journey Through the Administrative Process and Judicial Review of Administrative Actions,* 16 St. Mary's L.J. 155, 183 (1984)(same).

8. *Texas Southern University.*

■ This court has no opinion on the quality of Sylvester's answers to Bullock's questions. Because the school institutionally and through several of its high-paid, life-tenured professors breached its duty under the Constitution to discharge its responsibilities through a process that is regular and can be seen to be regular, Sylvester will be given a new grade. Bullock had three opportunities to evaluate Sylvester's work—first when he graded it; second when she asked for a review; and third when the court ordered and the dean set a review conference.

The school's committee had two opportunities to review—first it attempted to circumvent its duty by refusing to review the paper, and second it conducted a flawed one because the committee was illegal under the regulations governing committee composition and the material reviewed was not consistent with school requirements.

■ Based on the well-documented acts of the school, Sylvester will receive an equitable adjustment in her grade, a form of relief from which none of the actors, institutional or individual, is immune.

9. *Conclusion.*

Sylvester will be assigned a "pass" in Bullock's wills and trusts class at TSU. The original grade may have been exactly correct, but we will never know. No review by anyone at TSU at this point could be reasonably accepted. Between active manipulation and sullen intransigence, the faculty, embodying arbitrary government, have mistreated a student confided to their charge. This violates their duty to conduct the public's business in a rationally purposeful manner.

Sylvester was entitled to a review of her final that complied with school rules about grade disputes. She did not receive that review. TSU has persisted in its inability to obey the Constitution, to follow its rules, to speak candidly, or to act responsibly.

Although a "pass" will change her class rank from third to first, she will share that position with the current valedictorian.

## FINAL JUDGMENT

Texas Southern University will change (a) Karen Sylvester's grade to pass in wills and trusts and (b) her class rank from third to first, with her sharing that position with the current valedictorian.

Texas Southern University will file a certified copy of her corrected transcript with the court by noon, C.D.T., April 16, 1996, signed by the dean, Bullock, and academic standards committee chairman.