Robert JACKSON, Appellant,

v.

TEXAS SOUTHERN UNIVERSITY–THURGOOD MARSHALL SCHOOL OF LAW, J. Faith Jackson, Individually and as Employee, and McKen Carrington, Individually and as Employee, Appellees.

No. 14–06–00295–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 12, 2007.

Keith Alexander Gross, Kemah, for appellant.

James B. Eccles, Capitol Station, for appellees.

Panel consists of Chief Justice HEDGES and JUSTICES FOWLER and EDELMAN.

## OPINION

### WANDA McKEE FOWLER, Justice.

Appellant, Robert Jackson, was dismissed from Texas Southern University's Thurgood Marshall School of Law for failure to maintain at least a 2.0 grade point average. Jackson attributed his dismissal to a low grade received in a writing class, after the instructor gave him a zero for collaborating on a closed memo. Jackson sued Texas Southern University (TSU) and five other defendants, both individually and in their official capacities for defamation, fraud, breach of contract, and due process violations pursuant to 42 U.S.C. § 1983. The trial court granted the defendants' motions for summary judgment, and Jackson now appeals only the due process claims as to three defendants. Because we find that Jackson received due process, we affirm.

### Factual and Procedural Background

Jackson, a former police officer, began law school at TSU in the fall of 2003. One of his courses that fall was Lawyering Process I, taught by Professor J. Faith Jackson. The class was broken into several components. The final paper in the course, worth forty-nine percent of the total grade, was a "closed memo," meaning that the students must prepare the memo without the aid of anyone else.

One of the defendants below, Jong Kim, was a classmate of Jackson's who asked for a draft of Jackson's paper on two occasions, ostensibly to use as a guideline. Jackson acquiesced by printing out a copy of his paper and giving it to Kim.

After noting the striking similarities between the papers, Professor Jackson assigned both Jackson and Kim a zero. When Jackson saw his final grade for the course, a score of sixty-seven percent, he went to see Professor Jackson. During their initial conversation, Jackson admitted to giving Kim a copy of his paper. A second meeting was then arranged between Professor Jackson, Jackson, and Kim. At this meeting, Professor Jackson pointed out the similarities in the papers and allowed each person to explain to her their version of events. Concluding that, at the very least, the students had collaborated on a closed memo, Professor Jackson assigned them both a grade of zero for the memo. Jackson took no further steps at that time to have his grade changed.

However, during his spring semester Jackson pursued an honor court complaint against Kim, even though such a complaint could do nothing to change his own grade. Jackson also asked the Academic Standards Committee to extend the deadline for filing a request for a grade change, because he wanted to resolve the Kim honor court matter before he appeared before the Academic Standards Committee. After the spring semester ended, Jackson was notified by letter of his academic dismissal, pursuant to school policy. Jackson replied by letter stating that he had been waiting for the resolution of Kim's honor court proceeding before appealing his grade. He then formally filed his appeal with the Academic Standards Committee despite not having the Kim issue resolved.

The Academic Standards Committee met with Jackson and his attorney twice in the month of August. The first meeting was spent discussing Jackson's frustration with the honor court's failure to act in a timely manner on his complaint against Kim. The second meeting was approximately a week later, and Jackson and his attorney each had a chance to speak, with the committee asking questions. The committee was not concerned with whether Jackson cheated, but only with whether Jackson had been treated differently from

other similarly situated students. The committee ultimately denied Jackson's petition, and his dismissal was affirmed.

Jackson sued TSU, Professor Jackson, Dean Carrington, Academic Dean Vergie Mouton, Associate Dean Fernando Colon–Navarro, and Jong Kim. He alleged defamation, breach of contract, fraud and violation of due process pursuant to 42 U.S.C. § 1983. Kim was eventually nonsuited. The remaining defendants moved for summary judgment on all causes of action. The summary judgment was granted without specifying which arguments in the motion the court found meritorious. Jackson appeals here only the grant of summary judgment as to the due process claims.[1]

### Analysis

### I. Standard of Review

The defendants stated three grounds for dismissal of the due process claims—sovereign immunity as to TSU and as to the defendants in their official capacities, qualified immunity as to the defendants in their individual capacities, and satisfaction of due process. In its order granting summary judgment, the trial court did not state which ground it found meritorious. We review a trial court's grant of summary judgment de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Provident Life and Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). When the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented below and preserved on appeal are meritorious. *Id.* at 216. In light of this standard, we consider only the third basis for the motion for summary judgment—satisfaction of

due process—because it is dispositive of the appeal.

### II. Procedural Due Process Claim Fails Because Interest Asserted Is Not Protected by Due Process

Review of a procedural due process claim involves a two step analysis: (1) we must decide whether Jackson was deprived of a protected interest; and (2) if so, what process is due. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). The range of interests protected by due process is not infinite. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). For this reason, framing the nature of the property interest allegedly deprived is of fundamental importance in claiming a violation of due process.

In his appeal, Jackson raises a very specific complaint regarding his claim of procedural due process. He alleges a property interest in TSU's rules and regulations themselves. He states, "[w]hen TSU codified its Rules and Regulations, it conferred a right, or entitlement, to the student body that is protected by the Fourteenth Amendment." He also cites to *Sylvester v. Texas Southern University*, 957 F.Supp. 944 (S.D.Tex.1997), for the proposition that "TSU's Rules and Regulations conferred a benefit on the student body sufficient to merit due process protection." In his concluding remarks in one section of his brief, he states, "In summary, Appellant contends the success of his appeal rests upon whether the Court holds that appellant had a due process right to procedures established by TSU's Rules and Regulations."

However, the United States Supreme Court has made it clear that an individual

---

**1.** Vergie Mouton and Fernando Colon–Navar-    ro are not parties to this appeal.

does not acquire a substantive interest in specific procedures developed by the State. The Court explained,

> Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.

*Olim v. Wakinekona,* 461 U.S. 238, 250–51, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *accord Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 771–72, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005). Jackson's entire claim is that his due process rights were violated because TSU did not follow its own rules, and that he had a substantive interest in the process itself. Notably, he does not assert that the process he was given did not meet minimum due process standards.

Following the reasoning of *Olim* we conclude that Jackson has failed to state a cognizable due process claim because he has no substantive interest in specific rules.

### III. Substantive Due Process Satisfied

■ Reading his brief very generously, Jackson's brief also raises a substantive due process claim. Specifically, he claims he has the right to have his writing assignment fairly graded. He argues that the defendants' judicial admissions preclude the notion that the zero was given as a disciplinary measure for cheating; he claims the admissions prove instead that the zero was a purely subjective academic evaluation of Jackson's work. This would aid Jackson because his grade of zero is more likely to be found arbitrary and unreasonable if this court is precluded from considering the fact that the zero was given as punishment for cheating.

Jackson's judicial admission argument falls flat. First, the admission stating that Jackson's dismissal was academic rather than disciplinary states a conclusion of law, not subject to judicial admission. *See Jaksa v. Regents of the Univ. of Mich.,* 597 F.Supp. 1245, 1248 n. 2 (E.D.Mich.1984) (resolving question of whether suspension for cheating was disciplinary or academic as a matter of law on summary judgment); *H.E. Butt Grocery Co. v. Pais,* 955 S.W.2d 384, 389 (Tex.App.-San Antonio 1997, no pet.) (holding that a party may not judicially admit a question of law). Second, the alleged judicial admission stating that Jackson was never accused of cheating is taken out of context. The sentence he cites in the motion for summary judgment clearly means to say only that the administration never formally charged him with cheating, since the following sentence in the motion discusses the fact that Professor Jackson gave him a zero for not working independently on a paper requiring independent work. Finally, any admissions that formal charges were not filed, or that the school itself never took any actions against Jackson, do not preclude the fact that the zero was given by the professor as a disciplinary measure. Therefore, we do not accept Jackson's judicial admission argument, nor the proposition that the zero was a reflection of the academic merit of his paper rather than a disciplinary measure.

Since the zero was given as a disciplinary measure, the substantive due process question is simply whether the government action was arbitrary and capricious to the point of irrationality. *Harrington v. Harris,* 118 F.3d 359, 368 (5th Cir.1997). Giving a student a zero for cheating on course work is not irrational. It is a logical punishment, often handed down by teachers,

for turning in work that is not one's own, or for helping another person turn in work that is not their own. It is rational in that it gives no credit to a student who may not have done any work himself, and it is rational in that it serves as a deterrent to keep students from engaging in or repeating academic dishonesty. Jackson was not denied substantive due process in his receipt of a zero for cheating.

## Conclusion

Having found that Jackson failed to assert a cognizable procedural due process claim and that his substantive due process claim has no merit, we affirm the judgment of the trial court.