Affirmed and Opinion filed June 12, 2007








Affirmed and Opinion filed June 12, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00295-CV

____________

 

ROBERT JACKSON, Appellant

 

V.

 

TEXAS SOUTHERN UNIVERSITY-THURGOOD
MARSHALL SCHOOL OF LAW, J. FAITH JACKSON, INDIVIDUALLY AND AS EMPLOYEE, AND
MCKEN CARRINGTON, INDIVIDUALLY AND AS EMPLOYEE, Appellees

 



 

On Appeal from the 234th
District Court

Harris County, Texas

Trial Court Cause No. 04-45694

 



 

O P I N I O N








Appellant, Robert Jackson, was dismissed from Texas
Southern University=s Thurgood Marshall School of Law for
failure to maintain at least a 2.0 grade point average.  Jackson attributed his
dismissal to a low grade received in a writing class, after the instructor gave
him a zero for collaborating on a closed memo.  Jackson sued Texas Southern
University (TSU) and five other defendants, both individually and in their
official capacities for defamation, fraud, breach of contract, and due process
violations pursuant to 42 U.S.C. ' 1983.  The trial
court granted the defendants= motions for summary judgment, and Jackson
now appeals only the due process claims as to three defendants.  Because we
find that Jackson received due process, we affirm.

Factual and Procedural Background

Jackson, a former police officer, began law school at TSU
in the fall of 2003.  One of his courses that fall was Lawyering Process I,
taught by Professor J. Faith Jackson.  The class was broken into several
components.  The final paper in the course, worth forty-nine percent of the
total grade, was a Aclosed memo,@ meaning that the
students must prepare the memo without the aid of anyone else.

One of the defendants below, Jong Kim, was a classmate of
Jackson=s who asked for a
draft of Jackson=s paper on two occasions, ostensibly to
use as a guideline.  Jackson acquiesced by printing out a copy of his paper and
giving it to Kim.  

After noting the striking similarities between the papers,
Professor Jackson assigned both Jackson and Kim a zero.  When Jackson saw his
final grade for the course, a score of sixty-seven percent, he went to see
Professor Jackson.  During their initial conversation, Jackson admitted to
giving Kim a copy of his paper.  A second meeting was then arranged between
Professor Jackson, Jackson, and Kim.  At this meeting, Professor Jackson
pointed  out the similarities in the papers and allowed each person to explain
to her their version of events.  Concluding that, at the very least, the
students had collaborated on a closed memo, Professor Jackson assigned them
both a grade of zero for the memo.  Jackson took no further steps at that time
to have his grade changed. 








However, during his spring semester Jackson pursued an
honor court complaint against Kim, even though such a complaint could do
nothing to change his own grade.  Jackson also asked the Academic Standards
Committee to extend the deadline for filing a request for a grade change,
because he wanted to resolve the Kim honor court matter before he appeared
before the Academic Standards Committee.  After the spring semester ended, Jackson
was notified by letter of his academic dismissal, pursuant to school policy. 
Jackson replied by letter stating that he had been waiting for the resolution
of Kim=s honor court
proceeding before appealing his grade.  He then formally filed his appeal with
the Academic Standards Committee despite not having the Kim issue resolved.  

The Academic Standards Committee met with Jackson and his
attorney twice in the month of August.  The first meeting was spent discussing Jackson=s frustration with
the honor court=s failure to act in a timely manner on his
complaint against Kim.  The second meeting was approximately a week later, and
Jackson and his attorney  each had a chance to speak, with the committee asking
questions. The committee was not  concerned with whether Jackson cheated, but
only with whether Jackson had been treated differently from other similarly
situated students.  The committee ultimately denied Jackson=s petition, and
his dismissal was affirmed. 

Jackson sued TSU, Professor Jackson, Dean Carrington,
Academic Dean Vergie Mouton, Associate Dean Fernando Colon-Navarro, and Jong
Kim.  He alleged defamation, breach of contract, fraud and violation of due
process pursuant to 42 U.S.C. ' 1983.  Kim was eventually nonsuited.  The
remaining defendants moved for summary judgment on all causes of action.  The
summary judgment was granted without specifying which arguments in the motion
the court found meritorious.  Jackson appeals here only the grant of summary
judgment as to the due process claims.[1] 


Analysis

I.        Standard
of Review 








The defendants stated three grounds for dismissal of the
due process claimsCsovereign immunity as to TSU and as to the
defendants in their official capacities, qualified immunity as to the
defendants in their individual capacities, and satisfaction of due process.  In
its order granting summary judgment, the trial court did not state which ground
it found meritorious.  We review a trial court=s grant of summary
judgment de novo, taking as true all evidence favorable to the nonmovant, and
indulging every reasonable inference and resolving any doubts in the nonmovant=s favor.  Provident
Life and Acc. Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  When the
trial court=s order does not specify the grounds for its summary
judgment, we must affirm the summary judgment if any of the theories presented
below and preserved on appeal are meritorious.  Id. at 216.  In light of
this standard, we consider only the third basis for the motion for summary
judgmentCsatisfaction of
due processCbecause it is dispositive of the appeal.

II.       Procedural
Due Process Claim Fails Because Interest Asserted Is Not Protected by Due
Process

Review of a procedural due process claim involves a two
step analysis: (1) we must decide whether Jackson was deprived of a protected
interest; and (2) if so, what process is due.  Logan v. Zimmerman Brush Co.,
455 U.S. 422, 428 (1982).  The range of interests protected by due process is
not infinite.  Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569B70 (1972).  For
this reason, framing the nature of the property interest allegedly deprived is
of fundamental importance in claiming a violation of due process.  

In his appeal, Jackson raises a very specific complaint
regarding his claim of procedural due process.  He alleges a property interest
in TSU=s rules and
regulations themselves.  He states, A[w]hen TSU
codified its Rules and Regulations, it conferred a right, or entitlement, to
the student body that is protected by the Fourteenth Amendment.@  He also cites to
Sylvester v. Texas Southern University, 957 F. Supp. 944 (S.D. Tex.
1997), for the proposition that ATSU=s Rules and
Regulations conferred a benefit on the student body sufficient to merit due
process protection.@  In his concluding remarks in one section
of his brief, he states, AIn summary, Appellant contends the success
of his appeal rests upon whether the Court holds that appellant had a due
process right to procedures established by TSU=s Rules and
Regulations.@  

However, the United States Supreme Court has made it clear
that an individual does not acquire a substantive interest in specific
procedures developed by the State.  The Court explained, 








Process is not an end in itself. 
Its constitutional purpose is to protect a substantive interest to which the
individual has a legitimate claim of entitlement....The State may choose to
require procedures for reasons other than protection against deprivation of
substantive rights, of course, but in making that choice the State does not
create an independent substantive right.

Olim
v. Wakinekona, 461 U.S. 238, 250B51 (1983); accord
Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 771B72 (2005). 
Jackson=s entire claim is
that his due process rights were violated because TSU did not follow its own
rules, and that he had a substantive interest in the process itself.  Notably,
he does not assert that the process he was given did not meet minimum due
process standards.

Following the reasoning of Olim we conclude that
Jackson has failed to state a cognizable due process claim because he has no
substantive interest in specific rules. 

III.      Substantive
Due Process Satisfied

Reading his brief very generously, Jackson=s brief also
raises a substantive due process claim.  Specifically, he claims he has the
right to have his writing assignment fairly graded.  He argues that the
defendants= judicial admissions preclude the notion that the zero
was given as a disciplinary measure for cheating; he claims the admissions
prove instead that the zero was a purely subjective academic evaluation of
Jackson=s work.  This
would aid Jackson because his grade of zero is more likely to be found
arbitrary and unreasonable if this court is precluded from considering the fact
that the zero was given as punishment for cheating.  








Jackson=s judicial admission argument falls flat. 
First, the admission stating that Jackson=s dismissal was
academic rather than disciplinary states a conclusion of law, not subject to
judicial admission.  See Jaksa v. Regents of the Univ. of Mich., 597 F.
Supp. 1245, 1248 n.2 (E.D. Mich. 1984) (resolving question of whether
suspension for cheating was disciplinary or academic as a matter of law on
summary judgment); H.E. Butt Grocery Co. v. Pais, 955 S.W.2d 384, 389
(Tex. App.CSan Antonio 1997, no pet.) (holding that a party may
not judicially admit a question of law).  Second, the alleged judicial
admission stating that Jackson was never accused of cheating is taken out of
context.  The sentence he cites in the motion for summary judgment clearly
means to say only that the administration never formally charged him with
cheating, since the following sentence in the motion discusses the fact that
Professor Jackson gave him a zero for not working independently on a paper
requiring independent work.  Finally, any admissions that formal charges were
not filed, or that the school itself never took any actions against Jackson, do
not preclude the fact that the zero was given by the professor as a
disciplinary measure.  Therefore, we do not accept Jackson=s judicial
admission argument, nor the proposition that the zero was a reflection of the
academic merit of his paper rather than a disciplinary measure.

Since the zero was given as a disciplinary measure, the
substantive due process question is simply whether the government action was
arbitrary and capricious to the point of irrationality.  Harrington v.
Harris, 118 F.3d 359, 368 (5th Cir. 1997).  Giving a student a zero for
cheating on course work is not irrational.  It is a logical punishment, often
handed down by teachers, for turning in work that is not one=s own, or for
helping another person turn in work that is not their own. It is rational in
that it gives no credit to a student who may not have done any work himself,
and it is rational in that it serves as a deterrent to keep students from
engaging in or repeating academic dishonesty.  Jackson was not denied
substantive due process in his receipt of a zero for cheating. 

Conclusion

Having found that Jackson failed to assert a cognizable procedural
due process claim and that his substantive due process claim has no merit, we
affirm the judgment of the trial court. 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment
rendered and Opinion filed June 12, 2007.

Panel
consists of Chief Justice Hedges and Justices Fowler and Edelman.









[1]  Vergie Mouton and Fernando Colon-Navarro are not
parties to this appeal.