Affirmed and Opinion filed April 29,
2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00119-CV



Home Loan
Corporation D/B/A Expanded Mortgage Credit, Appellant 

v.

JPMorgan Chase
Bank, N.A., Appellee 



On Appeal from
the 280th District Court

Harris County, Texas

Trial Court
Cause No. 2007-76445



 

OPINION 

Home
Loan Corporation d/b/a Expanded Mortgage Credit appeals the trial court’s grant
of summary judgment in favor of JPMorgan Chase Bank, N.A.  On appeal, Home Loan
Corporation (“HLC”) specifically contends the trial court erroneously granted
summary judgment because there are genuine issues of material fact regarding
whether HLC breached its contract with JPMorgan Chase Bank (“JPMorgan”), and whether
HLC breached any representation, warranty, or covenant provisions in its
contract with JPMorgan.  Additionally, HLC argues the trial court should not
have awarded JPMorgan specific performance because JPMorgan failed to meet the
requirements to obtain specific performance.  Finally, HLC complains JPMorgan
should not have received its attorney’s fees and expenses because it failed to
prove the amount received as a matter of law.  We affirm.  I

            For
about six years, HLC was a correspondent mortgage banker for JPMorgan.  During
that time, JPMorgan purchased prime mortgage loans from HLC.  On February 22, 2007,
HLC and JPMorgan signed a letter confirming HLC’s intention to sell JPMorgan
thirty-one of its subprime mortgage loans for about $6.755 million.  This
transaction was JPMorgan’s first subprime loan purchase from HLC.  On March 20,
2007, HLC and JPMorgan entered into a contract titled “Mortgage Loan Purchase,
Sale and Interim Services Agreement” (the “Agreement”).  In the Agreement, HLC
and JPMorgan agreed the “closing date” for purchase of the loans would be on or
around March 20, 2007.[1]
 Additionally, the “cut-off date” would be two business days before the “closing
date” or funding date.[2]


In
the “Representations, Warranties and Covenants of Seller” section of the Agreement,
HLC agreed: (1) all loan payments due before the “cut-off date” would be made
as of the “closing date” ; there were no material defaults of the terms of the
loans; and there was not more than one delinquency on the loans during the
preceding twelve-month period.  The Agreement also contained an “Early Payment
Default” provision that stated: 

With respect to Mortgage Loans for which the first
scheduled monthly principal and interest amortization payment due to [JPMorgan]
after the Closing Date is not paid by the Mortgagor by the last day of the
month in which the payment is due, [HLC] shall, within five (5) Business Days
of receipt of notice from [JPMorgan], promptly repurchase such Mortgage Loan
from [JPMorgan] at the Repurchase Price, including without limitation, costs
and expenses incurred in the enforcement of [HLC’s] repurchase obligation
hereunder; provided, however, that [JPMorgan] must request that [HLC] repurchase
such Mortgage Loan within ninety (90) days of the date the Mortgagor becomes
delinquent on the first scheduled monthly principal and interest amortization payment
due to [JPMorgan].[3]


Hence,
if the mortgagors defaulted or HLC violated a representation or warranty
provision, HLC would have to repurchase the loans from JPMorgan at the
specified repurchase price.  Additionally, HLC was responsible for servicing
the loans until they were transferred to JPMorgan on April 10, 2007.  HLC sent
the mortgagors a “good-bye” letter on March 23, 2007, explaining their loans
had been transferred to JPMorgan.  The “good-bye” letter indicated when HLC
would stop servicing the loans as well as where the mortgagors should sent
their payments.  On April 23, 2007, JPMorgan sent a “hello” letter, which
complied with the HLC’s “good-bye” letter and the Real Estate Settlement
Procedures Act, to the mortgagors advising them of the service transfer, when JPMorgan
would start accepting their payments, and where to send the payments.       

Three
of the thirty-one loans, XXXX4723 (“Loan A”), XXXX4764 (“Loan B”), and XXXX4806
(“Loan C”), are the subject of this lawsuit because these mortgagors defaulted
on their payments.  The mortgagors’ April payment was due April 1, 2007, but
the mortgagors had until April 30 to timely make the payment.  They did not
make their April payments.  Because the three loans defaulted, JPMorgan
requested HLC to repurchase the loans in accordance with the Agreement.  HLC
refused to repurchase the loans, and JPMorgan filed a breach-of-contract claim
against HLC.  In addition to its breach-of-contract claim, JPMorgan alleged HLC
violated representation, warranty, and covenant provisions in the Agreement
because HLC knew the mortgagors for Loan A and Loan B had not made timely
payments in either January or February 2007.  

JPMorgan
moved for a traditional summary judgment on both its breach-of-contract claim
and its claims for breach of representations, warranties, and covenants.  The
trial court granted JPMorgan’s motion for summary judgment.  In its order, the
trial court awarded JPMorgan: (1) damages in the amount of $953,357.85; (2)
$44,000 in reasonable and necessary attorney’s fees; (3) $1,656 in reasonable
and necessary expenses; (4) post-judgment interest at the rate of 5 percent per
annum, compounded annually, from date of judgment; and (5) all taxable costs of
court.  Additionally, the order instructed JPMorgan to transfer Loans A, B, and
C to HLC after HLC paid the total amount awarded to JPMorgan.  This appeal
followed.      

II

HLC
complains that the trial court erroneously granted JPMorgan summary judgment
because JPMorgan hindered HLC’s ability to comply with the Agreement, and HLC
did not breach any representation, warranty, or covenant provisions in the
Agreement.  In relation to the breach-of-contract issue, HLC argues the trial
court should not have granted summary judgment because: (1) there is a genuine
issue of material fact demonstrating JPMorgan impeded the mortgagors from
making timely payments on the loans; (2) there is a fact issue in deciphering
whether the late payments resulted from HLC’s breach of contract or JPMorgan’s
servicing transfer; and (3) there is a fact issue concerning the forfeiture of
HLC’s contract benefits given the “nominal damages that [JPMorgan] incurred.”  In
raising these arguments, HLC claims JPMorgan’s negligence caused the mortgagors
to make untimely payments; hence, HLC has an affirmative defense to JPMorgan’s
breach-of-contract claim.  In response, JPMorgan argues HLC is procedurally
barred from presenting its affirmative defenses because it failed to plead the
defenses at the trial level; it further argues contributory fault or negligence
is not a defense to a breach-of-contract cause of action.  Additionally, JPMorgan
contends even if HLC’s defenses are not barred, they are insufficient to raise
a genuine issue of material fact to defeat the summary judgment.    

We
review the trial court’s summary judgment de novo.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  The party moving for a
traditional summary judgment has the burden to show that no genuine issue of material
fact exists.  Tex. R. App. P. 166a(c); M.D. Anderson Hosp. & Tumor Inst.
v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000).  If no material fact issue
exists, then the party is entitled to judgment as a matter of law.  Tex. R.
App. P. 166a(c); Willrich, 28 S.W.3d at 23.  We will assume that all
evidence favorable to the non-movant is true and indulge every reasonable
inference in favor of the non-movant.  KPMG Peat Marwick v. Harrison County
Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  If the movant
establishes it is entitled to summary judgment, then the burden shifts to the non-movant
to raise a genuine issue of material fact to defeat the summary judgment.  Centeq
Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex. 1995); Lundstrom v.
United Servs. Auto. Ass’n-CIC, 192 S.W.3d 78, 84 (Tex. App.—Houston [14th
Dist.] 2006, pet. denied).  Here, the trial court did not specify in its
summary-judgment order which ground it found meritorious.  If the trial court
fails to state why it found the summary judgment meritorious, we must affirm
the summary judgment if any of the theories presented to the trial court and
preserved on appeal are meritorious.  Knott, 128 S.W.3d at 216: Jackson
v. Tex. S. Univ.-Thurgood Marshall Sch. of Law, 231 S.W.3d 437, 439 (Tex.
App.—Houston [14th Dist.] 2007, pet. denied).  








            In
reviewing the substantive contract law, we do not apply Texas law because the
parties’ Agreement is governed by New York law.[4] 
Under New York law, for a party to prevail on a breach-of-contract claim, he
must establish: (1) the existence of a contract; (2) the party’s performance of
the contract; (3) the opposing party’s breach of the contract; and (4)
damages.  WorldCom, Inc. v. Sandoval, 701 N.Y.S.2d 834, 836 (Sup. Ct.
1999); see Furia v. Furia, 498 N.Y.S.2d 12, 13 (App. Div. 1986). 
Both parties agree they formed a valid contract—the Agreement.  Additionally,
the summary-judgment evidence demonstrates the mortgagors for Loans A, B, and C
did not timely make their April payments; hence, HLC breached the Early Payment
Default provision in the Agreement.[5] 
But HLC asserts an affirmative defense of negligence or comparative fault arguing
JPMorgan caused the mortgagors’ late payments.  HLC further contends although it
used the terms “negligence” and “comparative fault” in its answer and response
to JPMorgan’s summary-judgment motion, “negligence and/or comparative fault is
synonymous with waiver/excuse” in a breach-of-contract case.  We review New
York law to determine the validity of HLC’s argument.

            In
Viacom International, Inc. v. Midtown Realty Co., a landlord, tenant,
and the tenant’s insurance company disputed who should pay for fire damage to
the leasehold.  652 N.Y.S.2d 740, 740–41 (App. Div. 1997).  The lease provided
that if the “premises were partially damaged by fire, ‘the damages thereto
shall be repaired by and at the expense of Landlord.’”  Id. at 741.  The
insurance company moved for partial summary judgment against the landlord based
on his contractual obligation to make repairs at his expense.  Id.  The
lower court denied the insurance company’s motion because it concluded there
was a fact issue as to whether the fire was negligently caused.  Id.  The
Viacom court found the lower court erred because “negligence is not a
defense to a cause of action for breach of contract.”  Id.; see also
City of New York v. 611 W. 152nd St., Inc., 710 N.Y.S.2d 36, 38 (App. Div.
2000) (“The negligence and gross negligence defenses are meritless, since
claims based on negligent or grossly negligent performance of a contract are
not cognizable.”). 

Furthermore,
New York courts have emphasized that a defendant cannot claim a defense of
contributory or comparative negligence to breach-of-contract causes of action. 
Castleton Holding Corp. v. Forde, No. 19861/05, 2007 WL 925678, at *4
(N.Y. Sup. Ct. Mar. 23, 2007).  New York law expressly prohibits a “plaintiff’s
culpable conduct from being asserted as a defense” in a breach-of-contract
action.  Am. Express Equip. Fin. Corp. v. Mercado, 824 N.Y.S.2d 187
(App. Div. 2006) (citing Nastro Contracting, Inc. v. Agusta, 217 A.D.2d,
874, 875, 629 N.Y.S.2d 848 (App. Div. 1995)).  Courts have stressed that if a
defendant wishes to pursue a negligence claim against a plaintiff, then the
defendant must counterclaim instead of asserting negligence or comparative
negligence as a defense.  See, e.g., Camp Kennybrook Inc. v. Kuller, 632
N.Y.S.2d 874, 875–76 (App. Div. 1995) (explaining when the appellees stated
they did not pay the appellant the amount due under the contract, the
appellees’ reasoning—the appellant breached its duty of care and
supervision—“sound[ed] in tort and should have been interposed as a
counterclaim with a demand for affirmative relief, not as a defense”).

JPMorgan
is correct in arguing that HLC has failed to preserve its affirmative defenses
of waiver or excuse for appellate review.  HLC did not address either of these
defenses in its pleadings or in its response to JPMorgan’s motion for summary
judgment.  The non-movant has the burden to expressly present to the trial
court reasons it avoids summary judgment if the movant has proved it is entitled
to summary judgment as a matter of law.[6] 
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex.
1979); Augusta Court Co-Owners’ Ass’n v. Levin, Roth & Kasner, P.C.,
971 S.W.2d 119, 122 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).  If the
non-movant fails to meet the burden, then the non-movant has waived the issue
on appeal.  See City of Houston, 589 S.W.2d at 678; Levin, Roth &
Kasner, 971 S.W.2d at 122.  

Additionally,
HLC does not cite to any relevant authority that discusses how courts have
interpreted negligence or comparative negligence to be synonymous with waiver
or excuse.[7] 
See Tex. R. App. P. 38.1(i); Sterling v. Alexander, 99 S.W.3d
793, 798–99 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).  “An issue not
supported by authority is waived.”  Nguyen v. Kosnoski, 93 S.W.3d 186,
188 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  Because HLC breached the
contract and waived its affirmative defense of waiver or excuse, the trial
court properly granted summary judgment in favor of JPMorgan.[8]  Furthermore,
the trial court’s order granting summary judgment does not specify why it found
the summary judgment meritorious; therefore, we must affirm the summary
judgment if any of the theories JPMorgan presented to the trial court and
preserved on appeal are meritorious.  See Knott, 128 S.W.3d at
215; Jackson, 231 S.W.3d at 439.  Because we have concluded JPMorgan’s breach-of-contract
claim is meritorious, we do not need to discuss the merits of JPMorgan’s claim
that HLC also breached warranty, representation, or covenant provisions in the
Agreement.  Accordingly, we overrule HLC’s first and second issues.     

III

            In
its third issue, HLC complains the trial court should not have awarded JPMorgan
specific performance because JPMorgan failed to meet the requirements to obtain
specific performance.  In reviewing specific performance, HLC argues (1) JPMorgan
could not demonstrate HLC could perform, (2) money damages were the adequate
remedy, (3) JPMorgan did not fully perform its duties under the Agreement, and (4)
JPMorgan “failed to show how the balance of equities favored specific
performance.”  JPMorgan contends the trial court’s order did not award it
specific performance, but the order awarded JPMorgan money damages, which is an
appropriate remedy.  

            Both
HLC and JPMorgan cite DB Structured Products, Inc. v. Baltimore American
Mortgage Corp. to illustrate monetary damages is a proper remedy in this
case.    See No. 07 Civ. 4109(DLC)(KNF), 2009 WL 399746, at *4–5 (S.D.N.Y.
Jan. 23, 2009), rev’d on other grounds, No. 07 Civ. 4109(DLC), 2009 WL
948343 (S.D.N.Y. Apr. 7, 2009).  But while HLC relies on DB Structured
Products to show that specific performance is inappropriate in cases like
this, JPMorgan contends the relief it received in this case is identical to
that allowed in DB Structured Products.  DB Structured Products involved
a contract with an early-payment-default provision similar to the one in this
case.  See 2009 WL 399746, at *2.  The contract also contained a
provision requiring the defendant to repurchase the mortgage loans if the
mortgagors defaulted.  Id.  DB Structured Products (“DBS”) requested
both specific performance and monetary damages.  Id. at *4.  When
Baltimore American Mortgage Corporation (“BAMC”) failed to timely appear after
being sued in federal court, the district judge determined a default judgment
should be entered and referred the case to a magistrate to determine what
damages, if any, should be awarded to DBS.  Id. at *1.  The magistrate
decided BAMC breached its contract with DBS, but it recommended that the
district court award DBS only nominal damages instead of the full repurchase
price.  Id. at *10.  The magistrate judge also concluded specific
performance was not an appropriate remedy because there was no uncertainty of
the value of the defaulted loans.  Id. at *4–5.

DBS
objected to the magistrate’s recommendations.  DB Structured Prods., Inc.,
2009 WL 948343, at *2.  After hearing the objections, the district court
rejected the magistrate’s damages assessment and awarded DBS the full
repurchase price of the loans.  Id.  The court also instructed DBS to
“[w]ithin thirty days following payment in full of the amount awarded by this
judgment, [to] return to BAMC the Mortgage Loans as set forth in the Purchase
Agreement.”  Id. 

            HLC
is correct in stating that under New York law, to receive specific performance
a party must show: (1) there is a valid contract between the plaintiff and the
defendant; (2) the plaintiff has substantially performed under the contract and
is willing and able to continue to perform; (3) the defendant is able to
perform its obligations; and (4) the plaintiff has no adequate remedy at law.  See
EMF Gen. Contracting Corp. v. Bisbee, 774 N.Y.S.2d 39, 44 (App. Div.
2004).  HLC is also correct in contending JPMorgan requested specific
performance as a remedy or relief in its summary-judgment motion.  But HLC
incorrectly asserts JPMorgan did not seek damages in its summary-judgment
motion.  Although JPMorgan requested specific performance as its remedy in the
body of its motion for summary judgment, its prayer stated, 

“[JPMorgan] requests that this Court: (a) grant [JPMorgan’s]
Motion for Summary Judgment in its entirety; (b) award [JPMorgan] specific
performance of the Agreement such that HLC is required to pay [JPMorgan]
$953,357.85 . . . and upon receipt and deposit of the funds[JPMorgan] will
transfer the three Default Loans to HLC in accordance with the Agreement . . .
.”  

The
trial court’s order stated, “[JPMorgan] is awarded damages in the amount of
$953,357.85 from HLC . . . [and] upon HLC’s payment to [JPMorgan] of the total
amount awarded to [JPMorgan] in this Judgment, [JPMorgan] shall transfer [Loans
A, B, and C] to HLC.”  The relief JPMorgan was seeking in its prayer is the
exact relief the trial court awarded to JPMorgan, which is not specific
performance, but damages according to DB Structured Products.  See 2009
WL 948343, at *2 (“[T]he Court agrees that there was other competent evidence
in the record to support [DBS’s] requested damages amount.”).  

            HLC
alternatively argues that if JPMorgan properly received monetary damages, the
damages were excessive because JPMorgan failed to mitigate its damages as New
York law requires.  In HLC’s response to JPMorgan’s summary-judgment motion and
its brief, it contends “there are generally two ways to measure damages of a
loan in a repurchase case.”  The first method is foreclosure, and the second
method is selling the loans to a secondary purchaser.  Because JPMorgan failed
to use either of these methods, HLC complains JPMorgan did not mitigate its
damages.  JPMorgan contends HLC waived this argument on appeal because it never
properly raised the issue of mitigation at the trial level.  

            In
reviewing a summary judgment, “[i]ssues not expressly presented to the trial
court by written motion, answer or other response shall not be considered on
appeal as grounds for reversal.”  Tex. R. Civ. P. 166a(c); see also Tex.
R. App. P. 33.1(a)(1) (mandating that to preserve a complaint for appeal, the
record should demonstrate the complaint was made to the trial court).  Motions
and responses for summary judgment must stand or fall on the grounds expressly
presented to the trial court.  McConnell v. Southside Indep. Sch. Dist.,
858 S.W.2d 337, 341 (Tex. 1993).   A non-movant, therefore, must expressly present
to the trial court the reasons it avoids summary judgment.  See City of
Houston, 589 S.W.2d at 677–79.  

Although
HLC argued in its summary-judgment response that the damages could be measured
in either of two ways, it did not discuss the need for mitigation.  Instead, HLC’s
argument specifically countered JPMorgan’s assertion that monetary damages may
be difficult to calculate.  In its summary-judgment response, HLC neither portrays
either of the damage-calculation methods as any kind of mitigation nor cites
any case law concerning mitigation.  Accordingly, HLC waived its mitigation
argument.  Because HLC waived this argument and we concluded the trial court
properly awarded JPMorgan damages, we overrule HLC’s third issue. 

IV

            In
its fourth issue, HLC complains the trial court’s award of $44,000 in
attorney’s fees is improper because JPMorgan failed to prove its attorney’s
fees as a matter of law.[9] 
In the Agreement between HLC and JPMorgan, both the Early Default Provision and
the Repurchase Price definition allow JPMorgan to recover attorney’s fees if
HLC breaches the contract.  See supra Part II.  HLC relies on two New
York cases for the proposition that under New York law, trial courts require an
itemized billing statement or invoice specifically describing the attorney’s
work, hourly rate, and hours worked to award attorney’s fees.  See Scheichet
& Davis, P.C. v. Steinger, 583 N.Y.S.2d 407, 408 (App. Div. 1992); Paul
G. Marshall, P.C. v. Alpha Zenith Media, Inc., No. 114522/06, 2008 WL
660427, at *2 (N.Y. Sup. Ct. Feb. 28, 2008).  Because JPMorgan did not include
this information in its summary-judgment evidence, HLC claims the affidavit
from JPMorgan’s lead counsel, Wm. Lance Lewis, detailing the attorney’s fees is
conclusory.  

The
amount of attorney’s fees to award to a party is within a trial court’s
discretion.  SO/Bluestar, LLC v. Canarsie Hotel Corp., 825 N.Y.S.2d 80,
82 (App. Div. 2006).  A court factors the difficulty of the issues involved,
the time and labor required, and the skill and effectiveness of counsel when
deciding what attorney’s fees should be awarded.  Id.  “‘[T]he court
must possess sufficient information upon which to make an informed assessment
of the reasonable value of the legal services rendered.’”  Id. (quoting Bankers
Fed. Sav. Bank FSB v. Off W. Broadway Developers, 638 N.Y.S.2d 72, 74 (App.
Div. 1996)).  A sufficient affidavit discussing attorney’s fees describes the
hours the attorneys expended as well as the hourly rate for similar legal work
in the community.  Id.  In SO/Bluestar, LLC v. Canarsie Hotel
Corp., the court held the attorney’s affidavit detailing attorney’s fees
was “wholly inadequate” because the affidavit lacked the attorney’s hourly
rate, services performed, or any information that would assist the court in
deciding the reasonableness of the fees.  Id.  Although HLC cites cases
requiring a plaintiff to support its claim for attorney’s fees with an itemized
billing statement, as JPMorgan notes in its brief, those cases involve account-stated
claims, not breach-of-contract claims.   See Scheichet & Davis, P.C.,
583 N.Y.S.2d at 408; Paul G. Marshall, P.C., 2008 WL 660427, at *2.  After
reviewing attorney’s fees under New York law, we conclude SO/Bluestar is
more akin to the legal and factual issues in the case at bar.  

            Here,
Lewis’s affidavit included the range of billing rates for the attorney’s
working on the case—$190 to $275 per hour.  The affidavit also provided a
description of what work was performed, such as “propounding and responding to
substantial written discovery, preparation and attendance at the deposition of
HLC’s corporate representative, investigation and preparation of several
discovery related motions and the response to a discovery related motion,
preparation and attendance at several hearings, and the investigation and preparation
of the Motion for Summary Judgment.”  Additionally, Lewis opined the attorney’s
hourly billing rates were comparable to other attorneys practicing in Harris
County.  Finally, Lewis stated he reviewed the nature of the case, the nature
of the services required, the amount of money involved in the case, the
experience and skill needed to perform the service required, as well as other
factors in deciding what fees were reasonable under the circumstances.   Based
on the information in the affidavit and the requirements under New York law, we
cannot conclude the trial court abused its discretion in awarding $44,000 in
attorney’s fees to JPMorgan.  Accordingly we overrule HLC’s fourth issue.            

*
* *

For the foregoing reasons, we affirm the trial
court’s judgment.

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

Panel consists of Justices Yates,
Seymore, and Brown.

 









[1]
JPMorgan in fact purchased the loans on March 20.  





[2]
The “cut-off date” was March 16.





[3]
The “Repurchase Price” was defined as:

The greater of par or the related Purchase Price
Percentage, multiplied by the outstanding principal amount of the Mortgage Loan
subject to repurchase on the date of repurchase, plus: (i) accrued interest at
the rate set forth under the Mortgage Note through the day prior to the date of
such repurchase; (ii) any and all costs and expenses, including reasonable
attorney fees, incurred by [JP Morgan] to effect the repurchase; (iii) any and
all advances made by [JP Morgan] or its agent and charges due from Mortgagor
and (iv) any costs and damages incurred by [JP Morgan] or any assistance of [JP
Morgan] in connection with any violation by the repurchased Mortgage Loan of
any representation or warranty.





[4]
Neither HLC nor JP Morgan disputes that New York law governs the Agreement.  





[5]
Neither HLC nor JP Morgan disputes that the mortgagors failed to make their
April payments on time.





[6]
An issue is “expressly” presented if the non-movant’s written answer or
response to the motion for summary judgment fairly appraises the trial court
and movant of the issues the non-movant believes should defeat summary
judgment.  Tello v. Bank One, N.A., 218 S.W.3d 109, 119 (Tex.
App.—Houston [14th Dist.] 2007, no pet.).





[7]
HLC cites to Horizon/CMS Healthcare Corp. d/b/a Heritage Western Hills
Nursing Home v. Auld for the proposition that under Texas’s fair-notice
standard, we should assume that pleading negligence or comparative fault is
synonymous with pleading waiver or excuse.  34 S.W.3d 887, 896–97 (Tex. 2000). 
In Auld, the supreme court concluded that although Horizon/CMS pleaded
Section 41.008 of the Texas Civil Practice and Remedies Code, Horizon/CMS
discussed this section as the punitive-damages cap provision of Chapter 41,
which is actually Section 41.007 of the Texas Practice and Remedies Code.  Id. 
Even though Horizon/CMS pleaded the wrong provision, the court held it was
clear from the pleadings what Horizon/CMS intended, and “there was, and is,
only one punitive-damages cap provision in Chapter 41 [of the Texas Civil
Practice and Remedies Code].”  Id. at 897.  Auld is not similar
to the case at bar because the affirmative defense of negligence/comparative
fault and the affirmative defense of waiver/excuse are used for different
facets of the law—tort and contract.  Additionally, a special exception would
have not aided in explaining how a tort defense could be used to fend off a
breach-of-contract claim.  We are not persuaded by HLC’s argument.        





[8]
We will not address HLC’s argument that the forfeiture of HLC’s contractual
benefits is a “harsh result” because we decided JP Morgan’s breach-of-contract
claim was meritorious, and the court’s relief in its order to grant summary
judgment mirrors the relief provided in the Agreement.





[9]
HLC also argues the expenses the trial court
awarded to JP Morgan are improper.  But HLC failed to make this argument at the
trial court; therefore, it waived this issue on appeal.  See Tex. R.
Civ. P. 166a(c).