**HOME LOAN CORPORATION d/b/a Expanded Mortgage Credit, Appellant,**

v.

**JP MORGAN CHASE BANK, N.A., Appellee.**

No. 14–09–00119–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 29, 2010.

Lucy Haroutunian Forbes, Houston, for appellant.

William Lance Lewis, Gregory Marshall Sudbury, Marcie Lynn Schout, Matthew Joseph Kita, Dallas, for appellee.

Panel consists of Justices YATES, SEYMORE, and BROWN.

## OPINION

JEFFREY V. BROWN, Justice.

Home Loan Corporation d/b/a Expanded Mortgage Credit appeals the trial court's grant of summary judgment in favor of JPMorgan Chase Bank, N.A. On appeal, Home Loan Corporation ("HLC") specifically contends the trial court erroneously granted summary judgment because there are genuine issues of material fact regarding whether HLC breached its contract with JPMorgan Chase Bank ("JPMorgan"), and whether HLC breached any representation, warranty, or covenant provisions in its contract with JPMorgan. Additionally, HLC argues the trial court should not have awarded JPMorgan specific performance because JPMorgan failed

to meet the requirements to obtain specific performance. Finally, HLC complains JPMorgan should not have received its attorney's fees and expenses because it failed to prove the amount received as a matter of law. We affirm.

## I

For about six years, HLC was a correspondent mortgage banker for JPMorgan. During that time, JPMorgan purchased prime mortgage loans from HLC. On February 22, 2007, HLC and JPMorgan signed a letter confirming HLC's intention to sell JPMorgan thirty-one of its subprime mortgage loans for about $6.755 million. This transaction was JPMorgan's first subprime loan purchase from HLC. On March 20, 2007, HLC and JPMorgan entered into a contract titled "Mortgage Loan Purchase, Sale and Interim Services Agreement" (the "Agreement"). In the Agreement, HLC and JPMorgan agreed the "closing date" for purchase of the loans would be on or around March 20, 2007.[1] Additionally, the "cut-off date" would be two business days before the "closing date" or funding date.[2]

In the "Representations, Warranties and Covenants of Seller" section of the Agreement, HLC agreed: (1) all loan payments due before the "cut-off date" would be made as of the "closing date"; there were no material defaults of the terms of the loans; and there was not more than one delinquency on the loans during the pre-

ceding twelve-month period. The Agreement also contained an "Early Payment Default" provision that stated:

> With respect to Mortgage Loans for which the first scheduled monthly principal .and interest amortization payment due to [JPMorgan] after the Closing Date is not paid by the Mortgagor by the last day of the month in which the payment is due, [HLC] shall, within five (5) Business Days of receipt of notice from [JPMorgan], promptly repurchase such Mortgage Loan from [JPMorgan] at the Repurchase Price, including without limitation, costs and expenses incurred in the enforcement of [HLC's] repurchase obligation hereunder; provided, however, that [JPMorgan] must request that [HLC] repurchase such Mortgage Loan within ninety (90) days of the date the Mortgagor becomes delinquent on the first scheduled monthly principal and interest amortization payment due to [JPMorgan].[3]

Hence, if the mortgagors defaulted or HLC violated a representation or warranty provision, HLC would have to repurchase the loans from JPMorgan at the specified repurchase price. Additionally, HLC was responsible for servicing the loans until they were transferred to JPMorgan on April 10, 2007. HLC sent the mortgagors a "good-bye" letter on March 23, 2007, explaining their loans had been transferred to JPMorgan. The

---

1. JPMorgan in fact purchased the loans on March 20.

2. The "cut-off date" was March 16.

3. The "Repurchase Price" was defined as:
   The greater of par or the related Purchase Price Percentage, multiplied by the outstanding principal amount of the Mortgage Loan subject to repurchase on the date of repurchase, plus: (i) accrued interest at the rate set forth under the Mortgage Note through the

day prior to the date of such repurchase; (ii) any and all costs and expenses, including reasonable attorney fees, incurred by [JP Morgan] to effect the repurchase; (iii) any and all advances made by [JP Morgan] or its agent and charges due from Mortgagor and (iv) any costs and damages incurred by [JP Morgan] or any assistance of [JP Morgan] in connection with any violation by the repurchased Mortgage Loan of any representation or warranty.

"good-bye" letter indicated when HLC would stop servicing the loans as well as where the mortgagors should sent their payments. On April 23, 2007, JPMorgan sent a "hello" letter, which complied with the HLC's "good-bye" letter and the Real Estate Settlement Procedures Act, to the mortgagors advising them of the service transfer, when JPMorgan would start accepting their payments, and where to send the payments.

Three of the thirty-one loans, XXXX4723 ("Loan A"), XXXX4764 ("Loan B"), and XXXX4806 ("Loan C"), are the subject of this lawsuit because these mortgagors defaulted on their payments. The mortgagors' April payment was due April 1, 2007, but the mortgagors had until April 30 to timely make the payment. They did not make their April payments. Because the three loans defaulted, JPMorgan requested HLC to repurchase the loans in accordance with the Agreement. HLC refused to repurchase the loans, and JPMorgan filed a breach-of-contract claim against HLC. In addition to its breach-of-contract claim, JPMorgan alleged HLC violated representation, warranty, and covenant provisions in the Agreement because HLC knew the mortgagors for Loan A and Loan B had not made timely payments in either January or February 2007.

JPMorgan moved for a traditional summary judgment on both its breach-of-contract claim and its claims for breach of representations, warranties, and covenants. The trial court granted JPMorgan's motion for summary judgment. In its order, the trial court awarded JPMorgan: (1) damages in the amount of $953,357.85; (2) $44,000 in reasonable and necessary attorney's fees; (3) $1,656 in reasonable and necessary expenses; (4) post-judgment interest at the rate of 5 percent per annum, compounded annually, from date of judgment; and (5) all taxable costs of court. Additionally, the order instructed JPMorgan to transfer Loans A, B, and C to HLC after HLC paid the total amount awarded to JPMorgan. This appeal followed.

## II

HLC complains that the trial court erroneously granted JPMorgan summary judgment because JPMorgan hindered HLC's ability to comply with the Agreement, and HLC did not breach any representation, warranty, or covenant provisions in the Agreement. In relation to the breach-of-contract issue, HLC argues the trial court should not have granted summary judgment because: (1) there is a genuine issue of material fact demonstrating JPMorgan impeded the mortgagors from making timely payments on the loans; (2) there is a fact issue in deciphering whether the late payments resulted from HLC's breach of contract or JPMorgan's servicing transfer; and (3) there is a fact issue concerning the forfeiture of HLC's contract benefits given the "nominal damages that [JPMorgan] incurred." In raising these arguments, HLC claims JPMorgan's negligence caused the mortgagors to make untimely payments; hence, HLC has an affirmative defense to JPMorgan's breach-of-contract claim. In response, JPMorgan argues HLC is procedurally barred from presenting its affirmative defenses because it failed to plead the defenses at the trial level; it further argues contributory fault or negligence is not a defense to a breach-of-contract cause of action. Additionally, JPMorgan contends even if HLC's defenses are not barred, they are insufficient to raise a genuine issue of material fact to defeat the summary judgment.

■ We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *Provident Life & Accident*

*Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex.2003). The party moving for a traditional summary judgment has the burden to show that no genuine issue of material fact exists. Tex.R.App. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000). If no material fact issue exists, then the party is entitled to judgment as a matter of law. Tex.R.App. P. 166a(c); *Willrich,* 28 S.W.3d at 23. We will assume that all evidence favorable to the non-movant is true and indulge every reasonable inference in favor of the non-movant. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999). If the movant establishes it is entitled to summary judgment, then the burden shifts to the non-movant to raise a genuine issue of material fact to defeat the summary judgment. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Lundstrom v. United Servs. Auto. Ass'n–CIC,* 192 S.W.3d 78, 84 (Tex.App.-Houston [14th Dist.] 2006, pet. denied). Here, the trial court did not specify in its summary-judgment order which ground it found meritorious. If the trial court fails to state why it found the summary judgment meritorious, we must affirm the summary judgment if any of the theories presented to the trial court and preserved on appeal are meritorious. *Knott,* 128 S.W.3d at 216: *Jackson v. Tex. S. Univ.–Thurgood Marshall Sch. of Law,* 231 S.W.3d 437, 439 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

▮ In reviewing the substantive contract law, we do not apply Texas law because the parties' Agreement is governed by New York law.[4] Under New York law, for a party to prevail on a breach-of-contract claim, he must establish: (1) the existence of a contract; (2) the party's performance of the contract; (3) the opposing party's breach of the contract; and (4) damages. *WorldCom, Inc. v. Sandoval,* 182 Misc.2d 1021, 701 N.Y.S.2d 834, 836 (Sup.Ct.1999); *see Furia v. Furia,* 116 A.D.2d 694, 498 N.Y.S.2d 12, 13 (1986). Both parties agree they formed a valid contract—the Agreement. Additionally, the summary-judgment evidence demonstrates the mortgagors for Loans A, B, and C did not timely make their April payments; hence, HLC breached the Early Payment Default provision in the Agreement.[5] But HLC asserts an affirmative defense of negligence or comparative fault arguing JPMorgan caused the mortgagors' late payments. HLC further contends although it used the terms "negligence" and "comparative fault" in its answer and response to JPMorgan's summary-judgment motion, "negligence and/or comparative fault is synonymous with waiver/excuse" in a breach-of-contract case. We review New York law to determine the validity of HLC's argument.

In *Viacom International, Inc. v. Midtown Realty Co.,* a landlord, tenant, and the tenant's insurance company disputed who should pay for fire damage to the leasehold. 235 A.D.2d 332, 652 N.Y.S.2d 740, 740–41 (1997). The lease provided that if the "premises were partially damaged by fire, 'the damages thereto shall be repaired by and at the expense of Landlord.'" *Id.* at 741. The insurance company moved for partial summary judgment against the landlord based on his contractual obligation to make repairs at his expense. *Id.* The lower court denied the insurance company's motion because it concluded there was a fact issue as to whether the fire was negligently caused.

---

4. Neither HLC nor JP Morgan disputes that New York law governs the Agreement.

5. Neither HLC nor JP Morgan disputes that the mortgagors failed to make their April payments on time.

*Id.* The *Viacom* court found the lower court erred because "negligence is not a defense to a cause of action for breach of contract." *Id.; see also City of New York v. 611 W. 152nd St., Inc.,* 273 A.D.2d 125, 710 N.Y.S.2d 36, 38 (2000) ("The negligence and gross negligence defenses are meritless, since claims based on negligent or grossly negligent performance of a contract are not cognizable.").

■ Furthermore, New York courts have emphasized that a defendant cannot claim a defense of contributory or comparative negligence to breach-of-contract causes of action. *Castleton Holding Corp. v. Forde,* No. 19861/05, 15 Misc.3d 1111(A), 2007 WL 925678, at *4 (N.Y.Sup.Ct. Mar. 23, 2007). New York law expressly prohibits a "plaintiff's culpable conduct from being asserted as a defense" in a breach-of-contract action. *Am. Express Equip. Fin. Corp. v. Mercado,* 34 A.D.3d 880, 824 N.Y.S.2d 187 (2006) (citing *Nastro Contracting, Inc. v. Agusta,* 217 A.D.2d, 874, 875, 629 N.Y.S.2d 848 (1995)). Courts have stressed that if a defendant wishes to pursue a negligence claim against a plaintiff, then the defendant must counterclaim instead of asserting negligence or comparative negligence as a defense. *See, e.g., Camp Kennybrook Inc. v. Kuller,* 214 A.D.2d 264, 632 N.Y.S.2d 874, 875–76 (1995) (explaining when the appellees stated they did not pay the appellant the

amount due under the contract, the appellees' reasoning—the appellant breached its duty of care and supervision—"sound[ed] in tort and should have been interposed as a counterclaim with a demand for affirmative relief, not as a defense").

■■ JPMorgan is correct in arguing that HLC has failed to preserve its affirmative defenses of waiver or excuse for appellate review. HLC did not address either of these defenses in its pleadings or in its response to JPMorgan's motion for summary judgment. The non-movant has the burden to expressly present to the trial court reasons it avoids summary judgment if the movant has proved it is entitled to summary judgment as a matter of law.[6] *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979); *Augusta Court Co–Owners' Ass'n v. Levin, Roth & Kasner, P.C.,* 971 S.W.2d 119, 122 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). If the non-movant fails to meet the burden, then the non-movant has waived the issue on appeal. *See City of Houston,* 589 S.W.2d at 678; *Levin, Roth & Kasner,* 971 S.W.2d at 122.

Additionally, HLC does not cite to any relevant authority that discusses how courts have interpreted negligence or comparative negligence to be synonymous with waiver or excuse.[7] *See* Tex.R.App. P.

**6.** An issue is "expressly" presented if the non-movant's written answer or response to the motion for summary judgment fairly appraises the trial court and movant of the issues the non-movant believes should defeat summary judgment. *Tello v. Bank One, N.A.,* 218 S.W.3d 109, 119 (Tex.App.-Houston [14th Dist.] 2007, no pet.).

**7.** HLC cites to *Horizon/CMS Healthcare Corp. d/b/a Heritage Western Hills Nursing Home v. Auld* for the proposition that under Texas's fair-notice standard, we should assume that pleading negligence or comparative fault is synonymous with pleading waiver or excuse.

34 S.W.3d 887, 896–97 (Tex.2000). In *Auld,* the supreme court concluded that although Horizon/CMS pleaded Section 41.008 of the Texas Civil Practice and Remedies Code, Horizon/CMS discussed this section as the punitive-damages cap provision of Chapter 41, which is actually Section 41.007 of the Texas Practice and Remedies Code. *Id.* Even though Horizon/CMS pleaded the wrong provision, the court held it was clear from the pleadings what Horizon/CMS intended, and "there was, and is, only one punitive-damages cap provision in Chapter 41 [of the Texas Civil Practice and Remedies Code]." *Id.* at 897. *Auld* is not similar to the case at bar

38.1(i); *Sterling v. Alexander,* 99 S.W.3d 793, 798–99 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). "An issue not supported by authority is waived." *Nguyen v. Kosnoski,* 93 S.W.3d 186, 188 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Because HLC breached the contract and waived its affirmative defense of waiver or excuse, the trial court properly granted summary judgment in favor of JPMorgan.[8] Furthermore, the trial court's order granting summary judgment does not specify why it found the summary judgment meritorious; therefore, we must affirm the summary judgment if any of the theories JPMorgan presented to the trial court and preserved on appeal are meritorious. *See Knott,* 128 S.W.3d at 215; *Jackson,* 231 S.W.3d at 439. Because we have concluded JPMorgan's breach-of-contract claim is meritorious, we do not need to discuss the merits of JPMorgan's claim that HLC also breached warranty, representation, or covenant provisions in the Agreement. Accordingly, we overrule HLC's first and second issues.

## III

In its third issue, HLC complains the trial court should not have awarded JPMorgan specific performance because JPMorgan failed to meet the requirements to obtain specific performance. In reviewing specific performance, HLC argues (1) JPMorgan could not demonstrate HLC could perform, (2) money damages were the adequate remedy, (3) JPMorgan did not fully perform its duties under the Agreement, and (4) JPMorgan "failed to

show how the balance of equities favored specific performance." JPMorgan contends the trial court's order did not award it specific performance, but the order awarded JPMorgan money damages, which is an appropriate remedy.

Both HLC and JPMorgan cite *DB Structured Products, Inc. v. Baltimore American Mortgage Corp.* to illustrate monetary damages is a proper remedy in this case. *See* No. 07 Civ. 4109(DLC)(KNF), 2009 WL 399746, at *4–5 (S.D.N.Y. Jan. 23, 2009), *rev'd on other grounds,* No. 07 Civ. 4109(DLC), 2009 WL 948343 (S.D.N.Y. Apr. 7, 2009). But while HLC relies on *DB Structured Products* to show that specific performance is inappropriate in cases like this, JPMorgan contends the relief it received in this case is identical to that allowed in *DB Structured Products. DB Structured Products* involved a contract with an early-payment-default provision similar to the one in this case. *See* 2009 WL 399746, at *2. The contract also contained a provision requiring the defendant to repurchase the mortgage loans if the mortgagors defaulted. *Id.* DB Structured Products ("DBS") requested both specific performance and monetary damages. *Id.* at *4. When Baltimore American Mortgage Corporation ("BAMC") failed to timely appear after being sued in federal court, the district judge determined a default judgment should be entered and referred the case to a magistrate to determine what damages, if any, should be awarded to DBS. *Id.* at *1. The magistrate decided BAMC

---

because the affirmative defense of negligence/comparative fault and the affirmative defense of waiver/excuse are used for different facets of the law—tort and contract. Additionally, a special exception would have not aided in explaining how a tort defense could be used to fend off a breach-of-contract claim. We are not persuaded by HLC's argument.

8. We will not address HLC's argument that the forfeiture of HLC's contractual benefits is a "harsh result" because we decided JP Morgan's breach-of-contract claim was meritorious, and the court's relief in its order to grant summary judgment mirrors the relief provided in the Agreement.

breached its contract with DBS, but it recommended that the district court award DBS only nominal damages instead of the full repurchase price. *Id.* at \*10. The magistrate judge also concluded specific performance was not an appropriate remedy because there was no uncertainty of the value of the defaulted loans. *Id.* at \*4–5.

DBS objected to the magistrate's recommendations. *DB Structured Prods., Inc.,* 2009 WL 948343, at \*2. After hearing the objections, the district court rejected the magistrate's damages assessment and awarded DBS the full repurchase price of the loans. *Id.* The court also instructed DBS to "[w]ithin thirty days following payment in full of the amount awarded by this judgment, [to] return to BAMC the Mortgage Loans as set forth in the Purchase Agreement." *Id.*

■ HLC is correct in stating that under New York law, to receive specific performance a party must show: (1) there is a valid contract between the plaintiff and the defendant; (2) the plaintiff has substantially performed under the contract and is willing and able to continue to perform; (3) the defendant is able to perform its obligations; and (4) the plaintiff has no adequate remedy at law. *See EMF Gen. Contracting Corp. v. Bisbee,* 6 A.D.3d 45, 774 N.Y.S.2d 39, 44 (2004). HLC is also correct in contending JPMorgan requested specific performance as a remedy or relief in its summary-judgment motion. But HLC incorrectly asserts JPMorgan did not seek damages in its summary-judgment motion. Although JPMorgan requested specific performance as its remedy in the body of its motion for summary judgment, its prayer stated,

> "[JPMorgan] requests that this Court: (a) grant [JPMorgan's] Motion for Summary Judgment in its entirety; (b) award [JPMorgan] specific performance of the Agreement such that HLC is required to pay [JPMorgan] $953,357.85 ... and upon receipt and deposit of the funds[JPMorgan] will transfer the three Default Loans to HLC in accordance with the Agreement.... "

The trial court's order stated, "[JPMorgan] is awarded damages in the amount of $953,357.85 from HLC ... [and] upon HLC's payment to [JPMorgan] of the total amount awarded to [JPMorgan] in this Judgment, [JPMorgan] shall transfer [Loans A, B, and C] to HLC." The relief JPMorgan was seeking in its prayer is the exact relief the trial court awarded to JPMorgan, which is not specific performance, but damages according to *DB Structured Products. See* 2009 WL 948343, at \*2 ("[T]he Court agrees that there was other competent evidence in the record to support [DBS's] requested damages amount.").

■ HLC alternatively argues that if JPMorgan properly received monetary damages, the damages were excessive because JPMorgan failed to mitigate its damages as New York law requires. In HLC's response to JPMorgan's summary-judgment motion and its brief, it contends "there are generally two ways to measure damages of a loan in a repurchase case." The first method is foreclosure, and the second method is selling the loans to a secondary purchaser. Because JPMorgan failed to use either of these methods, HLC complains JPMorgan did not mitigate its damages. JPMorgan contends HLC waived this argument on appeal because it never properly raised the issue of mitigation at the trial level.

■ In reviewing a summary judgment, "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal." Tex.R. Civ. P. 166a(c); *see also* Tex.R.App. P.

33.1(a)(1) (mandating that to preserve a complaint for appeal, the record should demonstrate the complaint was made to the trial court). Motions and responses for summary judgment must stand or fall on the grounds expressly presented to the trial court. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). A non-movant, therefore, must expressly present to the trial court the reasons it avoids summary judgment. *See City of Houston*, 589 S.W.2d at 677–79.

Although HLC argued in its summary-judgment response that the damages could be measured in either of two ways, it did not discuss the need for mitigation. Instead, HLC's argument specifically countered JPMorgan's assertion that monetary damages may be difficult to calculate. In its summary-judgment response, HLC neither portrays either of the damage-calculation methods as any kind of mitigation nor cites any case law concerning mitigation. Accordingly, HLC waived its mitigation argument. Because HLC waived this argument and we concluded the trial court properly awarded JPMorgan damages, we overrule HLC's third issue.

## IV

■ In its fourth issue, HLC complains the trial court's award of $44,000 in attorney's fees is improper because JPMorgan failed to prove its attorney's fees as a matter of law.[9] In the Agreement between HLC and JPMorgan, both the Early Default Provision and the Repurchase Price definition allow JPMorgan to recover attorney's fees if HLC breaches the contract. *See supra* Part II. HLC relies on two New York cases for the proposition that under New York law, trial courts require an itemized billing statement or invoice specifically describing the attorney's work, hourly rate, and hours worked to award attorney's fees. *See Scheichet & Davis, P.C. v. Steinger*, 183 A.D.2d 479, 583 N.Y.S.2d 407, 408 (1992); *Paul G. Marshall, P.C. v. Alpha Zenith Media, Inc.*, No. 114522/06, 19 Misc.3d 1101(A), 2008 WL 660427, at *2 (N.Y.Sup.Ct. Feb. 28, 2008). Because JPMorgan did not include this information in its summary-judgment evidence, HLC claims the affidavit from JPMorgan's lead counsel, Wm. Lance Lewis, detailing the attorney's fees is conclusory.

■ The amount of attorney's fees to award to a party is within a trial court's discretion. *SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 33 A.D.3d 986, 825 N.Y.S.2d 80, 82 (2006). A court factors the difficulty of the issues involved, the time and labor required, and the skill and effectiveness of counsel when deciding what attorney's fees should be awarded. *Id.* " '[T]he court must possess sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered.' " *Id.* (quoting *Bankers Fed. Sav. Bank FSB v. Off W. Broadway Developers*, 224 A.D.2d 376, 638 N.Y.S.2d 72, 74 (1996)). A sufficient affidavit discussing attorney's fees describes the hours the attorneys expended as well as the hourly rate for similar legal work in the community. *Id.* In *SO/Bluestar, LLC v. Canarsie Hotel Corp.*, the court held the attorney's affidavit detailing attorney's fees was "wholly inadequate" because the affidavit lacked the attorney's hourly rate, services performed, or any information that would assist the court in deciding the reasonableness of the fees. *Id.* Although HLC cites cases requiring a plaintiff to support its claim for attorney's fees with an itemized

---

9. HLC also argues the expenses the trial court awarded to JP Morgan are improper. But HLC failed to make this argument at the trial court; therefore, it waived this issue on appeal. *See* Tex.R. Civ. P. 166a(c).

billing statement, as JPMorgan notes in its brief, those cases involve account-stated claims, not breach-of-contract claims. *See Scheichet & Davis, P.C.*, 583 N.Y.S.2d at 408; *Paul G. Marshall, P.C.*, 2008 WL 660427, at *2. After reviewing attorney's fees under New York law, we conclude *SO/Bluestar* is more akin to the legal and factual issues in the case at bar.

Here, Lewis's affidavit included the range of billing rates for the attorney's working on the case—$190 to $275 per hour. The affidavit also provided a description of what work was performed, such as "propounding and responding to substantial written discovery, preparation and attendance at the deposition of HLC's corporate representative, investigation and preparation of several discovery related motions and the response to a discovery related motion, preparation and attendance at several hearings, and the investigation and preparation of the Motion for Summary Judgment." Additionally, Lewis opined the attorney's hourly billing rates were comparable to other attorneys practicing in Harris County. Finally, Lewis stated he reviewed the nature of the case, the nature of the services required, the amount of money involved in the case, the experience and skill needed to perform the service required, as well as other factors in deciding what fees were reasonable under the circumstances. Based on the information in the affidavit and the requirements under New York law, we cannot conclude the trial court abused its discretion in awarding $44,000 in attorney's fees to JPMorgan. Accordingly we overrule HLC's fourth issue.

\*     \*     \*

For the foregoing reasons, we affirm the trial court's judgment.