**Motion for Rehearing Denied, Affirmed and Substitute Memorandum Opinion filed May 21, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-13-00928-CV

## ALICE M. JONES, Appellant

## V.

## ANTONIO MURILLO INDIVIDUALLY AND D/B/A TIGER CONSTRUCTION AND THE NATIONAL ASSOCIATION OF MINORITY CONTRACTORS OF TEXAS, Appellees

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2006-76136**

## SUBSTITUTE MEMORANDUM OPINION[1]

This appeal arises from a dispute over roof-repair work performed through the City of Houston's emergency home-repair program. An organization working

---

[1] We withdraw our previous memorandum opinion of March 31, 2015, and issue this substitute memorandum opinion.

through this program contracted with a roofer to repair a homeowner's roof. The homeowner was unhappy with the work and sued the contracting organization asserting claims for breach of contract and negligence. The trial court signed a default judgment awarding damages against the organization and the roofer. The trial court later vacated the default judgment and, after a bench trial, signed a take-nothing judgment in favor of the roofer and a default judgment for damages against the organization. The trial court refused the homeowner's request to modify the judgment against the contracting organization to include the similarly named national and local organizations as "fraudulent continuations" of the contracting organization. On appeal, the homeowner challenges the legal and factual sufficiency of the evidence to support the trial court's take-nothing judgment and the trial court's withdrawal of the prior default judgment against the contracting organization and refusal to modify the judgment to include the "fraudulent continuations" of the contracting organization. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant/plaintiff Alice M. Jones brought suit against Antonio Murillo individually and d/b/a Tiger Construction ("Murillo") and the National Association of Minority Contractors of Texas ("NAMC of Texas") asserting claims for breach of contract and negligence arising from repair work done to the roof of her home.[2] Jones and Murillo appeared, represented by counsel, for a bench trial. NAMC of Texas did not answer or appear for trial.

---

[2] Jones included the City of Houston in her petition; the City filed a plea to the jurisdiction, which the trial court granted. The trial court also granted the City's motion to sever shortly thereafter. The trial court initially entered a default judgment against Murillo and NAMC of Texas. The trial court signed an order vacating the default judgment, however. Finally, the trial court denied a summary-judgment motion filed by Murillo.

2

Murillo testified that he had contracted with the National Association of Minority Contractors ("NAMC") to make repairs on the roof of Jones's home. According to Murillo, he completed the work before the end of 2002 and was paid for his work in March 2003. Murillo explained that he knew he had completed the work satisfactorily because NAMC paid him for the job.

Jones testified that she entered into the City of Houston's emergency home-repair program. NAMC contracted with Murillo to fix Jones's roof. Murillo began work in October of 2002. Problems followed. According to Jones, she repeatedly complained to NAMC about Murillo's work. Jones testified that she met with Edna Goodie of NAMC in December of 2002, and, after this meeting, she expected that more work would be done on her roof. Jones stated that in January of 2003, Murillo came back to her home to finish up the work. Jones testified that she believed the work on her roof was completed in 2004, although she thought she would receive a "final statement" from "someone" saying her roof was completed. She did not receive a final statement or any other communication stating that the work was complete.

According to Jones, in 2005, she began smelling an odor "[l]ike a mildew or mold or something." Jones reported the odor to the City of Houston, and a few months later, on December 21, 2005, the City sent a company (Arrow-Tech) to her home to check on the odor. In February 2005, Jones received an inspection report indicating the work on her roof had not been completed.[3]

---

[3] A "City of Houston Code Enforcement" sticker dated February 1, 2005, was admitted into evidence. This sticker states "DO NOT REMOVE," but Jones testified that the sticker was handed to her. The sticker states, "Inspection reveals that the following items DO NOT comply with the City of Houston Building Code." The following items are hand-written on this sticker:
- Roof jacks not properly nailed through out roof
- All jacks have exposed nails
- Chimney flashing not properly done, nails in flashing exposed

3

Jones testified that she had been experiencing "a lot of sinus draining," which she thought was "just a regular cold." After the inspection, Jones went to the doctor and discovered she "had been exposed to the mold." She left her home in March 2006, because she was having medical problems. Jones moved in with her daughter and was still residing there at the time of the trial.

Jones testified that her children paid to have her roof repaired in 2010, but she was unable to repair any of the mold damage because she could not afford it. The trial court sustained an objection to Jones's testimony regarding a 2008 estimate she received to repair and remediate her home. Jones testified that she has been paying "4 to $500 a month for a home since 2006" that she could not occupy. She also testified that she owed $1,700 to her doctor for her medical treatment. The trial court also sustained Murillo's objections to Jones's testimony regarding the current cost to remediate the damage to her home.

According to Jones, she discovered through documentation she obtained "mostly from the City" that the City's emergency home-repair program "was pretty terrible, that a lot of people's homes weren't fixed right." Jones provided copies of several documents detailing some of the problems with the City's program and NAMC, but these documents were admitted only against NAMC of Texas.

Jones acknowledged that she had roof repairs done on her home in 1999 through a program administered by the City. She further stated that the 2002 problems were a continuation of the roof problems she had experienced in 1999. She testified that "the roof wasn't fixed right." Jones also acknowledged that a tree fell into the storage shed on her property during Hurricane Ike in September 2008,

- Shingle overhang incorrect east & west
- Caulking is not properly applied
- Exposed nails in top roof row
- Flashing at dormers

and that a "little piece" of a limb from the tree fell on her home and was cut off by a "tree person."  No roofer examined her roof for damage.  Jones agreed that the final inspection of her roof, showing that it had not been properly completed, was not done until two years after Murillo had completed the work on the roof.

Before closing arguments, Jones's attorney offered depositions of Darryl Samuels, Esther Francis, and Antonio Murillo against NAMC of Texas only.  The trial court admitted these depositions against NAMC of Texas.

As noted above, the trial court requested and received trial briefs from the parties before the trial court signed the judgment.  Murillo asserted in his trial brief that Jones had failed to file suit within the two-year statute of limitations for her negligence claim and she had failed to plead the discovery rule.  Murillo further asserted that Jones failed to submit any admissible evidence of damages against him.

The trial court signed a judgment in favor of Jones, awarding her $14,000 against NAMC of Texas, and ordering that Jones take nothing from Murillo.  Jones sought and received findings of fact and conclusions of law.  Jones filed a motion to modify or correct the judgment, asserting that she had "proved that NAMC-Greater Houston Chapter and NAMC, Inc. were a fraudulent continuation of NAMC-Texas" and thus the judgment should be modified or corrected to permit her to recover against NAMC of Texas and "its fraudulent continuations . . . NAMC, Inc. – Greater Houston Chapter, and NAMC, Inc."  Our record contains no ruling on this motion.

## II.  SUFFICIENCY OF THE EVIDENCE

On appeal, Jones presents four issues, asserting the trial court erred in concluding there was insufficient evidence of damages.  In Jones's first issue, she

5

asserts the trial court erred in holding there was no evidence to support any damages to Jones as a third-party beneficiary of Murillo's contract with NAMC. In her second issue, she argues the trial court erred in holding there was no evidence of any damages as to her breach-of-contract claim against Murillo. Similarly, in her third issue, Jones contends the evidence establishes as a matter of law all vital facts to support a finding of damages against Murillo. Finally, in her fourth issue, Jones asserts the trial court erred because the finding of no damages against Murillo is against the great weight and preponderance of the evidence.

In an appeal from a judgment rendered after a nonjury trial, we review the trial court's findings using the same standards of review applicable to a jury's verdict. *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). When reviewing the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *See id.* at 827. We must determine whether the evidence at trial would enable reasonable and fair-minded people to find the facts at issue. *See id.* The factfinder is the only judge of witness credibility and the weight to give to testimony. *See id.* at 819. When a party attacks the legal sufficiency of an adverse finding on an issue on which he bears the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue; the evidence is legally insufficient only if the contrary proposition is conclusively established. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001) (per curiam).

When reviewing a challenge to the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). After considering and weighing all the evidence, we set aside the fact finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *GTE Mobilnet of S. Tex. v. Pascouet*, 61 S.W.3d 599, 615–16 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We may not substitute our own judgment for that of the trier of fact, even if we would reach a different answer on the evidence. *Maritime Overseas Corp.*, 971 S.W.2d at 407. The amount of evidence necessary to affirm a judgment is far less than that necessary to reverse a judgment. *Pascouet*, 61 S.W.3d at 616. With these principles in mind, we turn to Jones's issues.

The trial court found that Jones was a third-party beneficiary under the contract between NAMC and Murillo. At trial, Jones testified that she had received bids for around $14,000 to repair her home in 2008.[4] Murillo objected to this testimony on the basis that Jones lacked personal knowledge; the trial court sustained Murillo's objection, and Jones does not complain about the trial court's ruling on this objection. Jones additionally points to her testimony that the cost to repair her house at the time of trial was "around" $20,000. Again, Murillo objected to Jones's testimony regarding the amount, and the trial court sustained this objection "as to the amount." Jones has not challenged these rulings on appeal. Jones further alleges damages of $4,000 in repairs to the roof of her home paid for by her children. Our review of the record, however, does not reveal any

---

[4] The trial court awarded damages in the amount of $14,000 to Jones against NAMC of Texas.

evidence to support this allegation; Jones testified that her children paid to have her roof repaired, but she never specified how much her children paid for this repair.

Finally, Jones relies on her testimony that she's been paying $400 to $500 per month to maintain her mortgage as additional evidence of damages. She asserts that she suffered damages of $40,000 for loss of the use of her home for seven years. But, under the Residential Construction Liability Act ("Act"),[5] Jones may recover only the following economic damages:

> (1) the reasonable cost of repairs necessary to cure any construction defect;
>
> (2) the reasonable and necessary cost for the replacement or repair of any damaged goods in the residence;
>
> (3) reasonable and necessary engineering and consulting fees;
>
> (4) the reasonable expenses of temporary housing reasonably necessary during the repair period;
>
> (5) the reduction in current market value, if any, after the construction defect is repaired if the construction defect is a structural failure; and
>
> (6) reasonable and necessary attorney's fees.

Tex. Prop. Code Ann. § 27.004(g) (West, Westlaw through 2013 3d C.S.). Because damages for loss of use of her home are not permitted by the Act,[6] this testimony is not evidence of damages that Jones may recover.[7] *See id.*

---

[5] *See* Tex. Prop. Code Ann. §§ 27.001–.007 (West, Westlaw through 2013 3d C.S.). The Act applies to Jones's claims. *See id.* §§ 27.001, 27.002.

[6] To the extent Jones's monthly mortgage payments could be construed as evidence of the reasonable expenses of temporary housing, Jones testified that she had been living with her daughter since Jones moved out of her own home. There is no evidence that Jones had been paying her daughter to stay in her daughter's home, nor is there any evidence regarding what the reasonable expenses of temporary housing would have been. In other words, there is no evidence to support reasonable temporary-housing expenses under the Act. *See* Tex. Prop. Code Ann. §27.004(g)(4).

8

Under the applicable standards of review, we conclude that the evidence is both legally and factually sufficient to support the trial court's conclusion that there was no evidence of damages. The trial court did not err in rendering a take-nothing judgment in Murillo's favor. We thus overrule Jones's first four issues.

### III. PROPRIETY OF VACATING DEFAULT JUDGMENT

The record reflects that, in December 2008, the trial court rendered a final no-answer default judgment against Murillo and NAMC of Texas, and that in January 2012, the trial court vacated that judgment after granting Murillo's bill of review.[8] In Jones's fifth issue, she contends the trial court erred in vacating the earlier default judgment against NAMC of Texas. The only argument in Jones's brief that arguably concerns the trial court's order vacating the default judgment is contained in the following excerpt:

> The trial court heard the evidence and awarded exemplary damages against Defendant the NAMC of Texas in 2008. While the default judgment was overturned, it could only be overturned by the appealing defendant, Murillo, and the proof and award should be left to stand against the defaulting defendant and its fraudulent continuation who never have appeared to this day. The judgment should be reformed accordingly.[9]

Jones provides no legal authority or analysis to support her statement that this default judgment "could only be overturned by the appealing defendant, Murillo."

Just before opening statements during the bench trial in this case, counsel for Jones noted in open court that the trial court's prior default judgment had been

---

[7] On appeal, Jones has not briefed any argument regarding the Act. *See* Tex. R. App. P. 38.1(f), (i); *see Home Loan Corp. v. JPMorgan Chase Bank, N.A.*, 312 S.W.3d 199, 205–06 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

[8] Our record does not contain Murillo's bill of review, any response thereto, or any reporter's record from any hearing on the bill of review.

[9] (citation to the record omitted).

vacated in a bill-of-review proceeding. Counsel also noted that NAMC of Texas had not appeared for the bench trial. Counsel then made the following statement:

> We have — subsequently there has been substantial evidence that was received in the form of postjudgment discovery; and I have that evidence in the form of depositions to submit to the court, along with proposed findings and conclusions in accordance with *Castleberry vs. Branscum*.
>
> I don't need to argue it in front of Mr. Murillo and his lawyers now, but I want the court to know that all of that is being submitted. And we ask that that default judgment be reinstated nunc pro tunc with the damages we prove up in this proceeding and also ask the court of equity to enter findings under *Castleberry vs. Branscum* in accordance with the evidence that will be before the court.

In the prior default judgment that had been vacated, the trial court had awarded $35,530 in actual damages and $50,000 in punitive damages. It is not clear what Jones's counsel was requesting when he asked the trial court to reinstate the default judgment nunc pro tunc. Counsel may have been asking the trial court to reinstate the December 2008 judgment as if it had never been vacated in the bill-of-review proceeding; but, if the trial court reinstated the default judgment, then there would be no need to hear evidence regarding damages at the bench trial, because the default judgment already contains damage awards. On the other hand, Jones's counsel may have been asking the trial court to render a post-answer default judgment against NAMC of Texas based on its failure to appear at the bench trial, without reinstating the prior default judgment. It would be appropriate to base such a post-answer default judgment on, among other things, evidence of damages presented at the bench trial. In the following colloquy, the trial court sought to clarify the relief Jones's counsel was requesting:

[trial court]: So I understand, [name of Jonses's counsel], on behalf of the plaintiff you are asking to enter a final default judgment at trial against National

10

> Minority Contractors and you will be submitting evidence on that default to the court in the form of deposition testimony and other exhibits?

[Jones's counsel]: Yes, Your Honor.

[trial court]: And you will be asking the court to enter a ruling on that, along with findings of fact and conclusions of law?

[Jones's counsel]: Thank you, Your Honor. That is correct.

Just after this colloquy, counsel for Jones began his opening statement for the bench trial, during which he stated to the trial court that he had "no quarrel with this court throwing out that default judgment. . . ."

Any complaint by Jones that the trial court erred in vacating the no-answer default judgment as to NAMC of Texas or that the trial court erred in failing to reinstate the no-answer default judgment as to NAMC of Texas does not fall within the narrow scope of the fundamental-error doctrine recognized by the Supreme Court of Texas. *See In re B.L.D.,* 113 S.W.3d 340, 350–52 (Tex. 2003). Jones was required to preserve error in the trial court to be heard on any such complaint on appeal. On the record before this court, we conclude that Jones failed to preserve error as to any such complaint by presenting this complaint in the trial court and obtaining an adverse ruling. *See* Tex. R. App. P. 33.1(a); *Kupersmith v. Weitz*, No. 14–05–00167–CV, 2006 WL 3407832, at *3 (Tex. App.—Houston [14th Dist.] Nov. 28, 2006, no pet.) (mem. op.). Accordingly, we overrule Jones's fifth issue.

### IV. REFUSAL TO MODIFY JUDGMENT

Jones asserts in her sixth and final issue that the trial court erred in failing to render judgment against the "fraudulent continuation" of NAMC of Texas. She asserts that NAMC, Inc. – Greater Houston Chapter and NAMC, Inc. have "used the corporate form to deceive claimants such as [Jones]."

11

The defendants named in Jones's live pleading and remaining in the case at the time of trial were Murillo and NAMC of Texas, yet the alleged "fraudulent continuations" to which Jones refers in her sixth issue are separate legal entities: NAMC, Inc. – Greater Houston Chapter and NAMC, Inc. It appears that Jones is alleging that NAMC of Texas is the alter ego of these entities or some other theory for piercing the corporate veil of these entities. Neither of these entities has ever been named as a defendant in this case and Jones has not pleaded in her petition any theory for piercing the corporate veil. Jones does not assert, and she has not shown, that the trial evidence proved as a matter of law a theory for piercing the corporate veil of either of these two entities. Jones has not shown that the trial court erred in failing to render judgment against NAMC, Inc. – Greater Houston Chapter or against NAMC, Inc. We overrule Jones's sixth issue.

## V. CONCLUSION

The evidence is both legally and factually sufficient to support the trial court's conclusion that there was no evidence of damages. The trial court did not err in rendering a take-nothing judgment in Murillo's favor. Likewise, Jones's complaints regarding NAMC of Texas are without merit.

The trial court's judgment is affirmed.


/s/          Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.

12