**Affirmed and Memorandum Opinion filed April 30, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-22-00907-CV

### JOANNE COHEN, Appellant

### V.

### P&C RESTORATION SERVICES, LLC, Appellee

**On Appeal from the County Court at Law No. 3
Fort Bend County, Texas
Trial Court Cause No. 18-CCV-061692**

## MEMORANDUM OPINION

In this appeal from a final judgment in favor of appellee P&C Restoration Services, LLC, appellant Joanne Cohen challenges the final judgment of the trial court on the basis that there was legally- and factually-insufficient evidence to support the implied findings of the trial court that Cohen breached her contract with P&C. Cohen also argues the trial court erred because she was excused from performance because P&C breached the contract first. Concluding that (1) the evidence was legally-sufficient and not factually-insufficient to support the trial

court's implied finding that there was an enforceable contract between Cohen and P&C and (2) Cohen never established that any alleged breach on the part of P&C was material, thus excusing her performance, we affirm the judgment of the trial court.

## I. BACKGROUND

After her Fort Bend County home was damaged by a neighbor's vehicle, Cohen signed a contract with P&C authorizing P&C to complete the repairs to her home as the general contractor for those repairs approved by her insurer. Although she received full payment from her insurance company for the cost of the repairs to her home as submitted by P&C, Cohen made only a partial payment to P&C when work began.

Once the work was complete, P&C submitted an invoice to Cohen for the cost of the unpaid work based on the insurance estimate P&C had sent to Cohen's insurer. Cohen attempted to negotiate the remaining amount and requested an accounting of all the monies that P&C had spent on the job. Ultimately, Cohen did not pay the outstanding balance due.

P&C filed suit against Cohen, alleging Cohen had breached their contract, for recovery of the unpaid outstanding balance of $13,557.91. The case was tried to the bench, and the trial court rendered a judgment in P&C's favor awarding the unpaid amounts as damages, as well as attorney's fees.

## II. ANALYSIS

Although she raises three legal issues in her appellate briefing, Cohen does not allege any error on the part of the trial court. Construing her appellate issues liberally, we reformulate her three issues into two allegations of error on the part of the trial court: (1) the evidence was legally and factually insufficient to support the

trial court's judgment with respect to its implied finding that the contingency contract was an enforceable contract; and, alternatively, if there was an enforceable contract that (2) the evidence was legally and factually insufficient to support the trial court's judgment because P&C breached the contract first.[1] *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) (construe briefs liberally); *see also* Tex. R. App. P. 38.1(f).

We begin with whether there is sufficient evidence of an enforceable contract.

## A.     Standard of review

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on which the party did not have the burden of proof at trial, the party must demonstrate no evidence exists to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal-sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable fact-finder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the fact-finder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

---

[1]We quote Cohen's appellate issues here:

Is the proposal entitled "Contingency Contract" a valid, enforceable, agreement, or does it require that the parties enter into a Repair Contract containing an agreed price for the repairs to Ms. Cohen's home?

Did the parties enter into a "Repair Contract" that contained an agreed price for repairs to Ms. Cohen's home along with specifications established by the detailed claims summary?

If the proposal entitled "Contingency Contract" is a valid and enforceable contract, did Plaintiff breach it first?

3

For a factual-sufficiency challenge, we consider all the evidence admitted at trial. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). "When we review factual sufficiency, we consider and weigh *all* of the evidence and will set aside the verdict only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *City of Keller*, 168 S.W.3d at 826.

## B.      Applicable law

To prove the existence of a valid contract, the plaintiff must establish: (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502 n.21 (Tex. 2018). Whether the parties reached an agreement is a question of fact. *Advantage Physical Therapy, Inc. v. Cruse,* 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Whether an agreement is legally enforceable, however, is a question of law. *See id.; Gaede v. SK Invs., Inc.,* 38 S.W.3d 753, 757 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). "It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000). "If an agreement to make a future agreement is not sufficiently definite as to all of the future agreement's essential and material terms, the agreement to agree is nugatory." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (internal quotation marks omitted).

To be enforceable, a contract must address all of its essential and material terms with "a reasonable degree of certainty and definiteness." *Pace Corp. v.*

*Jackson*, 284 S.W.2d 340, 345 (Tex. 1955). A contract must at least be sufficiently definite to confirm that both parties intended to be contractually bound. *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 846. And even when that intent is clear, the agreement's terms must also be sufficiently definite to enable a court to understand the parties' obligations, and to give an appropriate remedy if they are breached. *Fischer*, 479 S.W.3d 231, 237; *see also T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992) ("The material terms of the contract must be agreed upon before a court can enforce the contract."). The material terms of a contract are determined on a case-by-case basis. *T.O. Stanley Boot Co.*, 847 S.W.2d at 221.

To the extent that Cohen's allegation of error also requires contract construction, we apply the de novo standard of review. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019). Our primary objective is to effectuate the written expression of the parties' intent. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 889 (Tex. 2019). To do so, we "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id*. (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). We do not consider a provision in isolation and give it controlling effect; rather, we consider each provision in the context of the contract as a whole. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015).

## C.   The contingency contract

Cohen's primary defense was that there was no enforceable contract. She described the contingency contract as an agreement to agree; and asserted that the parties never entered into a "Repair Contract." In particular, Cohen takes issue with the fact that the contingency contract had no agreement as to price.

However, we disagree that the contingency contract was merely an agreement for a future agreement. The language clearly intends a present agreement between Cohen and P&C:

> I, the Owner for the above referenced property, have chosen P&C Restoration Services, LLC (PCRS) to be the general contractor to perform the work upon the property that the insurance company deems necessary, in the event that any insurance company approves any claim for repairs arising from damages to my Property.

The contingency contract became enforceable if Cohen's insurance approved the claim for repairs. If the insurer approved the claim, Cohen agreed that "this Agreement obligates and legally binds me to use PCRS for repair or replacement of my property upon approval of my insurance claim, unless this Agreement is terminated or cancelled pursuant to its terms."

Although the contingency contract does not provide for any specific pricing or costs, the contingency contract provides a mechanism for determining the costs for the repairs:

> I understand that, if my claim is approved, my Insurer will provide a detailed claim summary to me that will include specific details on the entire claim, the approved repairs, along with the approved prices. I agree to provide a complete copy of the Insurer's detailed claim summary to PCRS within five (5) days of my receipt of it.

> I understand that the full scope of work has not yet been established and agreed upon by the Insurer; therefore, I understand that no price is included in this Contingency Contract. The prices will be written on the Repair Contract once the Insurer has established an agreed price. The contract price will be the amount approved in the detailed claims summary, including material tax and any applicable overhead and profit. Only the exact amounts agreed to and as reflected in the detailed claims summary will be charged by PCRS *unless upgrades have been agreed upon or supplements have been approved*. I understand that the approved charges to be paid by the Insurer will be based upon the current market prices for the work that has to be

performed on the Property to restore it to an excellent condition.

The Repair Contract will include all of the specifications established by the detailed claims summary.

The contingency contract does reference, without defining, "the Repair Contract," however, there is no explanation of whether "the Repair Contract" was to be a contract between Cohen and P&C.[2] Regardless, the contingency contract clearly provides that the price for the repairs would be "the amount approved in the detailed claims summary" by the insurer. Similarly, the scope of work, although not defined in the contract, was to be governed by the detailed claims summary. Restated in other words: Cohen agreed to pay P&C for the scope of work approved by her insurer at the prices agreed to or set by the insurer. Therefore, the scope of repairs agreed to by the insurer at the prices agreed to by the insurer form the essential terms of the agreement.

We conclude that the contingency contract was an enforceable contract between Cohen and P&C constituting legally-sufficient and not factually-insufficient evidence supporting the trial court's final judgment.

We overrule reformulated issue one.

## D.    P&C's alleged breach

Cohen argues that even if there was an enforceable contract, then P&C breached the contract first. Cohen argues that P&C breached the contract by forcing Cohen to pay out-of-pocket costs when the contract specifically provides that she would not have out-of-pocket costs:

I understand that my out of pocket cost for any repair or replacement will only be my deductible, plus any non-recoverable depreciation,

_____

[2] A "Repair Contract" was neither received into evidence at trial, nor did P&C argue there was a written or oral agreement by that name. P&C's breach-of-contract claim was based on the contingency contract.

plus any upgrades I choose.

Cohen further argues that P&C breached the contract because the costs charged to Cohen were inaccurate. She asserts that P&C's overhead and profit should have been included in the prices approved by the insurer; however, P&C charged an additional line item for its overhead and profit.

We begin by noting that Cohen offers no authority or citations for her argument that because P&C first breached the contingency contract, she was excused from further performance under the contract. Cohen also does not address the question of whether any of the alleged contractual breaches were material breaches.

A material breach by one party to a contract can excuse the other party from any obligation to perform in the future. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) (per curiam); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."). A material breach is conduct that deprives the injured party of the benefit that it reasonably could have anticipated from the breaching party's full performance. *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994). By contrast, when a party commits a nonmaterial breach, the other party "is not excused from future performance but may sue for the damages caused by the breach." *Bartush-Schnitzius*, 518 S.W.3d at 436; *Earth Power A/C & Heat, Inc. v. Page*, 604 S.W.3d 519, 524 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see generally, e.g.*, *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("A breach of contract occurs when a party fails or refuses to do something he has promised to do."). Although Cohen could

have counterclaimed for any damages she experienced due to P&C's alleged breaches, the record does not reflect any claim for damages or offset.

Further, a contracting party's assertion that it is excused from further performance because of the other party's prior material breach is an affirmative defense that must be pleaded and proved. *See* Tex. R. Civ. P. 94; *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006); *Home Loan Corp. v. JPMorgan Chase Bank, N.A.*, 312 S.W.3d 199, 205 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (excuse is affirmative defense). A party waives an affirmative defense if it is not pleaded or tried by consent. *See Frazier v. Havens*, 102 S.W.3d 406, 411 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Cohen's live pleadings do not reflect any such affirmative defense.

Cohen did argue at the trial that she should have been excused from performance because of P&C's breaches. We assume for purposes of discussion that the affirmative defense was tried by consent; however, neither Cohen nor P&C argued or discussed the affirmative defense. The materiality of a breach is a question of fact. *See Bartush-Schnitzius*, 518 S.W.3d at 436; *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983). However, assuming the affirmative defense was tried by consent, Cohen did not receive a fact-finding on the materiality of P&C's breach. To the contrary, the final judgment of the trial court implies a finding that any breach was not material. Further, there is evidence that is legally sufficient and not factually insufficient to support the implied finding of the trial court that any breach on the part of P&C was not material. Cohen received a credit against the total owed to P&C for those costs that Cohen paid directly, and testimony established that she was not charged for any work that was not completed. Finally, to the extent that P&C overcharged for its profit or overhead, there was no evidence in the record reflecting that the overcharge was a material breach and

Cohen did not attempt to counterclaim for those amounts.

It was not enough for Cohen to argue that P&C breached the contract first (and present some evidence of this) in order to excuse her performance under the contingency contract. Therefore, we overrule reformulated issue two.

### III.   CONCLUSION

Having overruled reformulated issues one and two, we affirm the judgment of the trial court as challenged on appeal.


/s/     Charles A. Spain
        Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.